Anthony **RUGGIANO**, Jr., Appellant,

v.

**R.M. REISH, Warden.**

No. 01–3703.

United States Court of Appeals, Third Circuit.

Argued May 21, 2002.

Filed Sept. 19, 2002.

Linda S. Sheffield (argued), Atlanta, GA, for appellant.

Martin C. Carlson, United States Attorney, Theodore B. Smith, III (argued), Assistant United States Attorney, Harrisburg, PA, for appellee.

BEFORE: BECKER, Chief Judge, GREENBERG, Circuit Judge, and BARZILAY, Judge, U.S. Court of International Trade.*

## OPINION OF THE COURT

BECKER, Chief Judge.

This habeas appeal requires us to determine whether the Bureau of Prisons ("BOP") of the United States Department of Justice has accurately computed the amount of time petitioner Anthony Ruggiano, Jr. must serve on his federal sentence. In early 1998, Ruggiano was sentenced to 112 months in federal prison by the United States District Court for the Southern District of Florida (Roettger, J.) ("the sentencing court") after he pleaded guilty to federal charges of racketeering. At the time, Ruggiano was still serving a 2–4–year sentence on an unrelated state (New York) conviction for gambling. This appeal turns on whether (and to what extent) the sentencing court intended Ruggiano's federal sentence to run concurrently with his state sentence, as a court is permitted to in certain instances under feder-

* Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

al law and the Sentencing Guidelines. *See* 18 U.S.C. § 3584; U.S.S.G. § 5G1.3.

At the sentencing proceeding, Judge Roettger orally declared that he thought it appropriate "to go ahead and recommend that [Ruggiano's state sentence] be served concurrently and that he receive credit for the amount of time that he served there." [A43.] Then, in his written judgment, he recited that Ruggiano's sentence was "to run concurrent with State sentence. Defendant to receive credit for time served." [A47.] As will appear, fourteen months served on the state sentence is the time at issue. The BOP interpreted the court's statements granting the defendant "credit for time served" on his state sentence as merely a nonbinding recommendation which the BOP was at liberty to—and did in fact—ignore. The BOP, therefore, computed Ruggiano's 112–month federal sentence without any reduction for the time served on his state sentence.

Ruggiano filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania to challenge this determination but the Court denied relief, agreeing with the BOP that even if the sentencing court intended for its recommendation to be binding upon the BOP, that court had no authority under the relevant statutes or under the Sentencing Guidelines to credit Ruggiano for time served on his state conviction. We disagree. First, we conclude that the sentencing court did have authority under U.S.S.G. § 5G1.3 to adjust Ruggiano's sentence for time served on his state sentence in a way that is binding on the BOP. Second, we conclude that although the BOP does have exclusive authority to grant prisoners "credit" as that term is used in 18 U.S.C. § 3585(b), the type of "credit" granted to Ruggiano here was of a fundamentally different character, and was

well within the authority of the sentencing court.

Third, we believe that the sentencing judge's oral and written remarks indicate that he intended to exercise his authority to adjust Ruggiano's sentence to account for the time served on the state sentence. The judge's oral statement that he would "go ahead and recommend" such an adjustment was not merely precatory, as the BOP submits. Rather, by saying that he would "go ahead and recommend," the sentencing judge stated orally what it was that he intended to do in his final sentence, and, as evidenced by the subsequent written judgment, he did exactly what he said he would: grant the defendant "credit for time served" on his state sentence.

Finally, we are unpersuaded by the BOP's contention that the sentencing judge's actions violated the legal precedents of the jurisdiction in which he sat—that of the United States Court of Appeals for the Eleventh Circuit, or that such a putative violation would change the result. Accordingly, we will reverse the judgment and remand the case to the District Court with instructions to grant Ruggiano's petition for a writ of habeas corpus and to direct the BOP to credit him with the fourteen months served on his state sentence before entering federal custody.

### I. Facts and Procedural History

 On November 7, 1996 Ruggiano was sentenced by the state of New York to imprisonment for two to four years for the crime of promoting illegal gambling. Just over a month later, on December 16, 1996, Ruggiano was indicted by a federal grand jury in the United States District Court for the Southern District of Florida for unrelated racketeering offenses. In January 1997, federal authorities took Ruggiano out of state custody in New York and placed him in federal custody pursuant to

a writ of habeas corpus *ad prosequendum.*[1] On August 22, 1997, Ruggiano pled guilty before the Florida District Court to conspiracy to engage in racketeering in violation of 18 U.S.C. § 1962(d). As part of the plea agreement, Ruggiano expressly reserved the right "to have the instant sentence run concurrent with the state sentence which the defendant is presently serving." Plea Agreement at 3, ¶ 7. [A34.]

During the sentencing hearing on January 14, 1998, Ruggiano's attorney stated the following to the court:

Another housekeeping matter, your Honor, is he is presently serving a state sentence in New York. And part of our plea agreement is a paragraph that says the government will not oppose us seeking leave of the Court to sentence him concurrently with his state sentence.

And I talked about that before the sentencing today with Mr. Berg from the probation department. And under 5G [of the Sentencing Guidelines] you do have the authority to do that, your Honor. You can sentence Mr. Ruggiano concurrently with the state sentence.

He is going to serve a long sentence, we know that, probably longer than any other defendant or as long as any of the defendants that you are going to sentence.

And he wasn't at the top [of the racketeering scheme.] He was somewhere in the middle. And that is reflected by where they found his role in the offense. And because of that I would ask that you consider sentencing him concurrently with the case in New York and that

you also consider giving him the low end.

[A39–40.]

The court did not immediately respond, and shortly thereafter declared merely that Ruggiano would be sentenced to 112 months in prison to be followed by a 3–year supervised release. After the court finished reciting Ruggiano's sentence, it asked counsel if either had objection, to which Ruggiano's attorney responded by reminding the court of Ruggiano's request that the court "consider ruling that this [the federal] sentence be concurrent with the state sentence under 5G and—"

The court interrupted Ruggiano's counsel and stated:

It doesn't sound as if he has much time to go on the state sentence. But I think it makes sense to go ahead and recommend that it be served concurrently and that he receive credit for the amount of time he has served there.

[A43.]

In its written judgment issued that same day, the court restated Ruggiano's sentence:

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 112 months. Sentence imposed to run concurrent with State sentence. Defendant to receive credit for time served.

[A47.] Neither party appealed the sentencing order to the Court of Appeals for the Eleventh Circuit.

---

**1.** A prisoner detained pursuant to a writ *ad prosequendum* is considered to remain in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the person. The receiving sovereign—in this case, the federal government—is, therefore, considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him. *See Jake v. Herschberger,* 173 F.3d 1059, 1061 n. 1 (7th Cir.1999). For the purposes of computing Ruggiano's sentence, therefore, the time spent in federal custody pursuant to a writ *ad prosequendum* is credited toward his state sentence, not his federal sentence.

On January 30, 1998, the federal authorities returned Ruggiano to New York state custody where he proceeded to serve the remainder of his state sentence. On November 15, 1998, Ruggiano was paroled to federal custody and he has remained in federal custody at the Federal Correctional Institution in Schuykill, Pennsylvania (FCI—Schuykill) since then.

■ Upon entering federal custody, the BOP, pursuant to its statutory duty, calculated the beginning and end dates of Ruggiano's sentence. *See* 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed."). In doing so, the BOP did not credit Ruggiano for the time between 11/7/96 and 1/97, during which he was serving his state sentence in a New York prison. Neither did the BOP credit Ruggiano for the time between 1/1/97 and 1/14/98 during which he was still serving his state sentence but was being "borrowed" by the federal authorities pursuant to a writ of habeas corpus *ad prosequendum. See supra* note 1. Because these 14 months were not spent in custody in fulfillment of Ruggiano's federal sentence, but rather constituted time spent in custody in fulfillment of his state sentence, the BOP was not required to credit Ruggiano this time under § 3585(b), which mandates that the BOP "credit" toward the defendant's sentence "any time he has spent in official custody prior to the date the sentence commences . . . as a result of the offense for which the sentence was imposed"—i.e., the time a defendant spends in prison between arrest and sentencing. *See Rios v. Wiley,* 201 F.3d 257, 272–73 (3d Cir.2000) (concluding that cred-

it is not allowed under § 3585(b) for time served that has already been credited against defendant's state sentence).

Ruggiano, however, contends that the sentence entered by the Florida sentencing court already gave him credit for the 14 months served on his state conviction (from 11/7/96 to 1/14/98). In other words, Ruggiano avers that, in view of Judge Roettger's declaration of a sentencing order with credit, he was sentenced to 112 months minus the time served on the state conviction (14 months), and it was from this base (98 months) that the BOP should have calculated the point at which his sentence would be satisfied. Ruggiano, in essence, accuses the BOP of simply failing to follow the sentencing court's order. Accordingly, he sought relief through the BOP's administrative channels. After exhausting the BOP's remedial avenues without success, Ruggiano sought relief pursuant to a writ of habeas corpus, 28 U.S.C. § 2241, filed against petitioner R.M. Reish, the warden of FCI—Schuykill, in the United States District Court for the Middle District of Pennsylvania. The District Court denied his petition, and Ruggiano now appeals.[2]

■ We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). In reviewing a federal habeas judgment, "we exercise plenary review over the district court's legal conclusions and apply a clearly erroneous standard to its findings of fact." *Rios,* 201 F.3d at 262. Although the issue to be discussed, *infra, i.e.,* exactly what the sentencing judge intended in issuing his sentencing order, contains some elements of a factual nature, we have previously described this type of inquiry as "essentially legal in nature," and we there-

---

**2.** Although the named respondent in this matter is Reish, the parties refer throughout their submissions to the appellee as the Bureau of Prisons (BOP) because the appeal involves a sentencing calculation matter. For ease of reference, we too have adopted that designation of the appellee.

fore exercise plenary review over the District Court's conclusions regarding this matter. *Id.*

## II. Sentencing Court's Authority to Adjust for Time Served on State Conviction Under U.S.S.G. § 5G1.3(c)

As a threshold matter, the BOP contends that, irrespective of what the sentencing court actually did or intended, it had no authority under the Sentencing Guidelines—specifically, under U.S.S.G. § 5G1.3, entitled "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment"—to grant Ruggiano credit for time served on his state conviction. In particular, the BOP argues that the 1995 amendments to § 5G1.3, which were applicable at Ruggiano's sentencing, specifically prohibit a sentencing judge from adjusting a defendant's sentence to give credit for time served on an unrelated offense.

Federal law—specifically, 18 U.S.C. § 3584[3]—and section 5G1.3 of the Sentencing Guidelines allow a sentencing court to award a concurrent sentence to a defendant that is subject to an undischarged term of imprisonment. Together, these provisions "attempt[ ] to achieve some coordination of sentences imposed in" situations in which multiple crimes have not been jointly prosecuted (because, for instance, they were committed in different jurisdictions) or in instances in which the prosecution of one offense is subsequent to a defendant's imprisonment for another offense so as "to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." *Witte v. United States,* 515 U.S. 389, 404—05, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). In such situations, § 5G1.3, which constrains a sentencing court's discretion to adjust a sentence under § 3584, is intended to coordinate the sentencing process "with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time (i.e., had all of the offenses been prosecuted in a single proceeding)." *Id.* at 404–05, 115 S.Ct. 2199.

The text of section 5G1.3 of the Guidelines consists of three subsections, which we rescribe here:

(a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant

---

**3.** Subsection (a) of 18 U.S.C. § 3584 states:
 If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively.... Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.
 Subsection (b) continues:

The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).
18 U.S.C. § 3553(a), in turn, lists a number of factors—such as "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed"—to be considered by the sentencing court.

offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

(c) (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

Subsection (a) of § 5G1.3 applies when the new offense was committed while the defendant was serving a term of imprisonment, and mandates that any new period of imprisonment be consecutive to the previous one. Subsection (b) applies when the instant offense and the offense for which the undischarged term were imposed relate to the same crime, and requires that the new sentence run "concurrently to the undischarged term of imprisonment." Although it is not obvious from the text of subsection (b) that "concurrently" refers to time already served on the preexisting sentence, Application Note 2 in the Commentary to § 5G1.3(b) provides that the defendant should be credited for that time. It states, "When a sentence is imposed pursuant to subsection (b), the court should adjust the sentence for any period of imprisonment already served as a result of the conduct taken into account in determining the guideline range for the instant offense. . . ." U.S.S.G. § 5G1.3 cmt. n. 2.

Note 2, therefore, makes clear that "concurrently" in subsection (b) means fully or retroactively concurrently, not simply concurrently with the remainder of the defendant's undischarged sentence.

■ Because Ruggiano did not commit his racketeering offense while incarcerated, nor was it related to his state gambling offense, neither subsection (a) nor (b) of § 5G1.3 applies to his sentencing. Hence, as both parties agree, the "catch-all provision" of § 5G1.3—subsection (c)—applies. *See* U.S.S.G. § 5G1.3 cmt. n. 3 ("In circumstances not covered under subsection (a) or (b), subsection (c) applies."). As cited above, subsection (c) states that "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c).[4]

The BOP contends that neither this language, nor the language of the commentary to § 5G1.3 that expounds upon subsection (c)—namely, Application Notes 3 through 5—permits a court to award credit for time served on an undischarged state sentence. The BOP submits that a prohibition on granting credit for time served on an unrelated sentence was effected by the 1995 amendments to the Guidelines, which altered the language of subsection (c) and its applicable commentary.[5]

---

**4.** Although the Guidelines label subsection (c) a "Policy Statement," "the policy statements and commentary contained in the guidelines are binding on the federal courts." *Rios,* 201 F.3d at 260 n. 3 (citations omitted).

**5.** The pre–1995 version of § 5G1.3(c) stated:

(Policy Statement) In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable

incremental punishment for the instant offense.

U.S. Sentencing Guidelines Manual Appendix, Amendment 535 (2000).

Moreover, the pre–1995 version of Note 3 of the commentary to § 5G1.3 elaborated:

[T]he court shall impose a consecutive sentence to the extent necessary to fashion a sentence resulting in a reasonable incremental punishment for the multiple offenses. In some circumstances, such incremental punishment can be achieved by the imposition of a sentence that is concurrent

Hence, the BOP asserts, our holding in *Rios v. Wiley*, 201 F.3d 257 (3d Cir.2000), which construed subsection (c) as permitting the sentencing judge to adjust a defendant's sentence downward for time served on an unrelated state sentence, is inapplicable, for *Rios* interpreted only the pre–1995, amendments version of § 5G1.3(c).

We need not delve into the BOP's detailed arguments as to why the post–1995 version of § 5G1.3(c) ought to be interpreted so as to prohibit crediting, for although some of our sister courts of appeals have adopted the BOP's view, *see, e.g., United States v. Fermin*, 252 F.3d 102 (2d Cir. 2001), we have already ruled to the contrary on this very issue, a fact which the BOP appears to have overlooked. In *United States v. Brannan*, 74 F.3d 448 (3d Cir.1996), we held that under § 5G1.3(c) and the commentary thereto, the district court was free to adjust a defendant's sentence so as to account for time served on an unrelated state conviction. *See id.* at 452 n. 6 (concluding that under § 5G1.3(c) a "court [may] recognize[ ] time already served for another offense if and to the extent appropriate"). The BOP appears to assume that *Brannan*'s interpretation applied only to the pre-amendment version of the Guidelines, *see* Br. of BOP at 30–31; however, in *Brannan* we explicitly noted that our conclusion was unaffected by the 1995 amendments to § 5G1.3(c). *See id.* at 450 n. 2.

Moreover, we find the BOP's reasoning unavailing. The BOP stresses the fact that § 5G1.3 Application Note 2, which

expounds upon subsection (b) only, explicitly provides that "[w]hen a sentence is imposed pursuant to subsection (b), the court should adjust the sentence for any period of imprisonment already served," whereas subsection (c) does not so explicitly provide. The absence of such a provision in the commentary to subsection (c), the BOP concludes, "suggests the [Sentencing Commission] did not intend for sentencing courts to make downward adjustments to account for time served." BOP Br. at 24–25. We disagree. As we see it, the relevant difference between subsections (b) and (c) that is suggested by Note 2 is that, while credit for time served on related convictions "should" be granted under subsection (b), it *may* be granted by the sentencing court in its discretion in subsection (c) cases, but is not required. This appears to be the change that was effected by the 1995 amendments to the Guidelines. Whereas the pre–1995 commentary stated that the sentencing court "*should* consider a reasonable incremental penalty ... that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time," § 5G1.3(c) cmt. n. 3 (1994) (emphasis added), the post–1995 commentary's silence on this matter suggests to us not that this practice of "hypothetical sentencing" is no longer allowed, but simply that it is not necessarily re-

---

with the remainder of the unexpired term of imprisonment. In such cases, a consecutive sentence is not required. To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that

would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time. *Id.* This commentary is then followed by four illustrations of how to apply subsection (c).

quired or encouraged as it was under the pre–1995 Guidelines.

Indeed, we hinted at this interpretation of the 1995 amendments' effect in *United States v. Saintville*, 218 F.3d 246 (3d Cir. 2000), where we noted that under the new version of subsection (c), "a sentencing court no longer *must* make the hypothetical calculation" that was required under the pre–1995 Guidelines. *Id.* at 249 (emphasis added); *see also id.* (observing that the amended subsection (c) no longer "*requires* the court to make a hypothetical sentencing calculation") (emphasis added). While noting that a hypothetical sentencing calculation was no longer required under the amended Guidelines, we did not, however, declare that the amended Guidelines *prohibited* a sentencing court from making such a calculation. *See also United States v. Anderson*, 98 F.Supp.2d 643, 645 n. 3. (E.D.Pa.2000) ("[T]he court does not believe that the [1995] revisions in any way affect the primary holdings of [*Rios* and *Brannan*], which permit adjustment of a sentence under 5G1.3 to reflect time served for which no credit is received....").

We would feel more confident in this conclusion if the commentary to subsection (c) explicitly referred to adjustments for time served as does the commentary to subsection (b). However, the fact that the commentary to subsection (c) does not refer to adjustments for time served does not persuade us that such adjustments are inappropriate because the text of subsection (c) itself explicitly states that "the sentence for the instant offense may be imposed to run *concurrently.*" (Emphasis added.) The BOP argues, citing to an opinion of the United States Court of Appeals for the Second Circuit, *Fermin*, 252 F.3d at 102, that "concurrently" in the text of § 5G1.3(c) can only be read to mean concurrently with the remainder of the pre-existing sentence, and not concurrently with the full pre-existing sentence (i.e., retroactively concurrent). We again disagree, for the text of subsection (b) also uses the term "concurrently" yet, as the commentary to that subsection makes clear, the authors of the Guidelines intended for "concurrently" in § 5G1.3(b) to mean concurrent with the full pre-existing sentence. *See* § 5G1.3 cmt. 2. It would be most anomalous if "concurrent" were to mean retroactively concurrent in subsection (b), but could not mean the same in subsection (c). *See* 2A *Sutherland Statutory Construction* § 46:06, at 193 (Norman J. Singer ed., 6th ed. 2000) ("There is a presumption that the same words used twice in the same act have the same meaning"); *United States v. Milan*, 304 F.3d 273 at 293 (3d Cir.2002) (noting that the rules of statutory construction apply when interpreting the Guidelines).

The BOP also stresses the fact that the pre–1995 commentary to § 5G1.3(c) stated that the sentencing court "shall impose a consecutive sentence to the extent necessary to fashion a sentence resulting in a reasonable incremental punishment for the multiple offenses." By omitting this reference to "reasonable incremental punishment," the BOP submits, the new version of the commentary to § 5G1.3(c) does not allow for downward adjustments based on time served on an unrelated state conviction. While we recognize that our opinions interpreting the pre–1995 version of § 5G1.3(c) often cited to this "reasonable incremental punishment" language, *see, e.g., Rios,* 201 F.3d at 265, we are unconvinced that the absence of this language in the post–1995 version of the Guidelines has the significance that the BOP attributes to it. Rather, because, for the reasons given above we read "concurrently" under the new version of § 5G1.3(c) as capable of meaning fully or retroactively concurrently, it appears to us that the amendments to

§ 5G1.3(c) imposed only a new semantic formulation for what is still, in essence, the imposition of a "reasonable incremental punishment" through "concurrent" or "partially concurrent" sentencing.

██ Accordingly, we are confident that, despite the decisions of our sister courts of appeals to the contrary, our conclusion in *Brannan* that credit for time served on a pre-existing sentence is allowed under § 5G1.3(c) is correct. We are satisfied, therefore, that the court that sentenced Ruggiano had the authority under § 5G1.3(c) to adjust Ruggiano's sentence for the time served on his state conviction; we now turn to whether the court in fact exercised this power in sentencing the appellant.

### III. What the Sentencing Court Did

As discussed above, during the sentencing hearing Ruggiano's attorney asked the court to sentence Ruggiano "concurrently with his state sentence" and reminded the court that it had the authority to do so under U.S.S.G. § 5G. Minutes later, Ruggiano's attorney again requested that the court "consider ruling that [the federal] sentence be concurrent with the state sentence under 5G and—," upon which the court interrupted:

> It doesn't sound as if he has much to go on the state sentence. But I think it makes sense to go ahead and recommend that it be served concurrently and that he receive credit for the amount of time that he has served there.

[A43.] That same day, the court entered its written judgment, which stated:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 112 months. Sentence imposed to run concurrent with State sentence. Defendant to receive credit for time served. [A47.]

Ruggiano contends that the court's oral and written sentence indicate that his total sentence was to be adjusted so as to account for time served on his state conviction. In other words, Ruggiano submits, his final sentence was intended to be and hence was 112 months minus the 14 months served on his state conviction, totaling 98 months. The BOP counters that even if a sentencing court has the authority to adjust for time served under U.S.S.G. § 5G1.3(c), the sentencing court here did not in fact do so for three reasons. First, the BOP contends that the sentencing court had no authority to grant the defendant "credit" for time served, because only the BOP, under 18 U.S.C. § 3585(b), and not the sentencing court, has the authority to award "credit" to inmates when calculating their sentence. Second, and relatedly, the BOP contends that the sentencing court's oral sentence—particularly its use of the word "recommend"—indicates that the court was imposing only a non-binding recommendation on the BOP that it was free to ignore in calculating Ruggiano's sentence. Finally, and also relatedly, the BOP avers that under Eleventh Circuit law, which is the jurisdiction in which the sentencing court—the District Court for the Southern District of Florida—is located, awarding credit for time served on a state conviction is not allowed. Hence, the BOP argues, we cannot infer that the sentencing court intended to award such credit when doing so would have been in violation of the controlling Eleventh Circuit authority on the subject. We address each of the BOP's contentions, in turn.

### A. The Meaning of the Term "Credit"

██ 18 U.S.C. § 3585(b), entitled "Credit for prior custody," states:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

As we have noted previously, § 3585(b) uses the term "credit" as a term of art. *See Rios*, 201 F.3d at 269. This type of "credit," awarded for time served in detention for the same offense for which the defendant is ultimately sentenced, may only be calculated by the BOP. The sentencing (district) court has no authority to award "credit" as that term is used in § 3585(b). *United States v. Wilson*, 503 U.S. 329, 333, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992).

■■■ The type of "credit" awarded by the sentencing court to Ruggiano, however, was completely different from the type of "credit" discussed in § 3585(b). While the latter is within the exclusive authority of the BOP to award, credit for time served on a pre-existing state sentence is within the exclusive power of the sentencing court. Indeed, as quoted above, § 3585(b) specifically prohibits the BOP from awarding credit for time that has been "credited against another sentence." As was ably explained by our colleague Judge Stapleton in his concurring opinion in *United States v. Dorsey*, 166 F.3d 558 (1999):

[M]uch of th[is] conflict . . . is attributable to [the] use of the word "credit" to refer to two distinct benefits that a convicted defendant may receive[:]

[1.] A sentencing judge is charged with determining the length of any sentence of incarceration to be served. In the course of doing so, it may impose a lesser sentence than it otherwise would have because of any number of relevant factors in the case.

[2.] After a defendant has been sentenced to a term of incarceration, the custodian must determine when the sentence imposed will have been satisfied. In the course of doing so, the custodian may give "credit" against the sentence for such things as presentence detention, good behavior, etc.

*Id.* at 564.

■■■ The BOP argues that even if "credit" can be used to refer to two distinct benefits, one which is within the sentencing court's authority and one which is not, it was the second of the two benefits described by Judge Stapleton to which the sentencing court was referring when it sentenced Ruggiano. We find this argument implausible in light of the fact that the court's oral sentence granted the "credit" immediately after referring to Ruggiano's state sentence:

It doesn't sound as if he has much time to go on the state sentence. But I think it makes sense to go ahead and recommend that . . . he receive credit for the amount of time that he has served there.

The written sentence evinces a similar intent when it states, "Sentence imposed to run concurrent with State sentence. Defendant to receive credit for time served."

It is clear to us, therefore, that the sentencing court intended to award Ruggiano the first of the two benefits described by Judge Stapleton, which was well within its authority, and not "credit" as that term is used in § 3585(b), for, as we noted in *Rios*, the mere fact that "an application of section 5G1.3(b) or (c) and the commentary by the sentencing court, and the award of

sentencing credit by the BOP under section 3585(b), may result in the same benefit to the defendant ... does not alter the fact that the two benefits bestowed are distinct, and the Supreme Court's opinion in *Wilson* only meant to refer to the award of sentencing credit under section 3585(b) when it determined that the power to award that credit was entrusted exclusively to the BOP." 201 F.3d at 270. All that happened here is that, just as in *Rios* and *Dorsey*, "the sentencing court simply used th[e] term ['credit'] slightly imprecisely, which ... cannot be considered an unprecedented occurrence." *Id.* at 269.

 While we think that the sentencing court's intentions were clear enough, we encourage sentencing courts in the future to avoid using the term "credit" to refer to § 5G1.3 adjustments so as not to engender any unnecessary confusion. We admit that our court has not always been consistent in how we have referred to § 5G1.3 adjustments. In *Brannan*, 74 F.3d at 454, we termed the recognition of time served on a state sentence pursuant to § 5G1.3 a "downward departure," while noting that using the term "departure" in this sense "var[ied] slightly from the concept [of 'departure'] elsewhere in the Guidelines," *id.* at 452 n. 6. However, in *Dorsey*, 166 F.3d at 560, we appeared to refer to § 5G1.3 departures as "credits" (which is what prompted Judge Stapleton to write his aforementioned concurrence); and later, in *Rios* (2000), we dubbed a § 5G1.3 departure an "adjustment." 201 F.3d at 266.

Because the term "departure" is, as we acknowledged in *Brannan*, imprecise, and because the term "credit" raises the confusion with § 3585(b) described above, we prefer the term "adjustment" to describe the kind of benefit being awarded a defendant by a sentencing court under § 5G1.3. *See United States v. Zapata*, 1996 WL

673866, 1996 U.S.App. LEXIS 30301 (9th Cir. Nov. 5, 1996) (not precedential) ("In general, courts do not have authority to calculate credits, ... [but] the district court can make an *adjustment* to the second sentence in order to assure that it is fully concurrent with the first one.") (emphasis added). We therefore urge sentencing courts in the future to state something to the effect of "I hereby *adjust* the defendant's federal sentence under § 5G1.3(c) so as to be fully concurrent with his state sentence," in order to avoid much of the confusion that this case, and many others, have presented.

### B. Was the Sentencing Court's "Recommend[ation]" Binding?

 The BOP also asserts that even if the sentencing court did not intend to award Ruggiano a "credit" as that term is used in § 3585(b), it nevertheless only issued a nonbinding recommendation that Ruggiano's sentence be adjusted downward for time served on his state conviction, a recommendation that the BOP was free to ignore. We disagree. In interpreting a sentencing court's statements, we "inspect[ ] ... the sentencing transcript as well as the judgment the sentencing court entered." *Rios*, 201 F.3d at 265. When a sentencing court's oral sentence and its written sentence "are in conflict," the oral sentence prevails. *United States v. Faulks*, 201 F.3d 208, 211 (3d Cir.2000). However, when there is no conflict between the oral and written statements, but rather only ambiguity in either or both, we have recognized that the controlling oral sentence "often [consists of] spontaneous remarks" that "are addressed primarily to the case at hand and are unlikely to be a perfect or complete statement of all the surrounding law." *Rios*, 201 F.3d at 268 (citation omitted).

In interpreting the oral statement, we have recognized that the context in which this statement is made is essential. For instance, in *Rios*, we were called upon to interpret a sentencing court's oral statement sentencing the defendant "to a term of 90 months on both counts to run concurrently with each other and concurrently with the state sentence and that you receive credit for time served." *Id.* at 261. There, as here, the BOP contended that the sentencing court's provision for "credit for time served" was mere surplusage and nonbinding. *See id.* at 269. In concluding otherwise, we emphasized the need to "view the sentencing court's language in the context of the overall proceeding," *id.*, taking particular note of the fact that the defendant had, during the sentencing hearing, specifically asked the court to adjust his sentence downward for time served on a pre-existing state conviction. *See id.* at 267 (noting that "[t]he juxtaposition of the actual words used in pronouncing the sentence and the discussion between the attorneys on the one hand and the court on the other demonstrates that the sentencing court was cognizant of the time Rios had spent in pre-sentence incarceration, and further that Rios sought consideration for that time from the court in its determination of the sentence to be imposed").

Applying a similar method of analysis here, we think it clear that by its statements—both oral and written—the sentencing court intended to adjust downward for the time served on Ruggiano's New York sentence pursuant to § 5G1:3(c) and to make this adjustment binding on the BOP as part of Ruggiano's final sentence. The mere fact that the sentencing court did not refer to § 5G1.3(c) specifically in its sentence does not dissuade us from our conclusion, for, as we noted in *Rios*, 201 F.3d at 268, it is not necessary for "the court [to] state explicitly its reliance on section 5G1.3(c) and Application Note 3" when "the overall context in which the court imposed the sentence and the information before the court at that time"— here, Ruggiano's attorney had twice specifically requested that "this [the federal] sentence be concurrent with the state sentence under 5G"—makes clear that the court was indeed relying on this provision.

Nor are we persuaded by the BOP's emphasis on the sentencing court's use of the word "recommend." In stating, "I think it makes sense to go ahead and recommend that [Ruggiano's sentence] be served concurrently and that he receive credit for the amount of time served there [on his state sentence]," the sentencing court merely indicated its intent to go ahead and adjust the sentence pursuant to § 5G1.3(c). This, as we see it, is in fact what the court did, as evidenced by its written statement to that effect—"Sentence imposed to run concurrent with State sentence. Defendant to receive credit for time served." We see no conflict between the oral and written statements, but rather consistency; the sentencing judge said that he was going to go ahead and adjust, and that is precisely what he did.

At most the oral sentence might be viewed as ambiguous, but as we stated in *Rios*:

> District judges normally deliver their decisions on sentencing from the bench, just after, and sometimes in the course of, the presentation of numerous arguments and even evidence as to the permissible range and proper sentence. These often spontaneous remarks are addressed primarily to the case at hand and are unlikely to be a perfect or complete statement of all of the surrounding law.

201 F.3d at 268. It is therefore understandable that Judge Roettger's use of the

word "recommend" was less than opportune. The mere fact that he may have been somewhat loose in his language pronouncing the sentence, however, does not persuade us that he intended to issue only a nonbinding recommendation to the BOP when the written judgment—which merely clarifies, and is not in conflict with, the oral sentence—as well as the context in which the judge's remarks were made demonstrate otherwise.

Moreover, the BOP, in arguing that the sentencing judge intended through his "nonbinding recommendation" to grant to the BOP the power and discretion to adjust Ruggiano's sentence for time served on his state conviction, would have us believe that the sentencing judge gave the BOP power which it is statutorily prohibited from exercising, for as we noted above, *see supra* at 132, adjusting a sentence for time served on a state conviction pursuant to § 5G1.3 is within the exclusive authority of the sentencing court. Adjustments for time served on an unrelated state conviction are outside the purview of the BOP's powers to grant credit, which are limited to matters such as time served in detention related to the instant offense, good behavior, etc. We decline to attribute to as capable and experienced a jurist as

Judge Roettger an ineffective pronouncement that would amount to nothing more than surplusage.[6]

## C. The (Ir–)Relevance of Eleventh Circuit Law

Finally, the BOP contends that because Eleventh Circuit jurisprudence, which was the controlling legal authority for the sentencing court, does not permit adjustments for time served on a state conviction under § 5G1.3(c), we ought to assume that the sentencing court was following this precedent and did not intend to award Ruggiano an adjustment that is impermissible under Eleventh Circuit law. We decline to view the sentencing court's statements solely in the context of Eleventh Circuit law, for while such an exercise is arguably relevant to discerning the court's true intent in issuing its sentence, we think that, for the reasons stated above, the sentencing court clearly indicated its intention to adjust Ruggiano's sentence for the time served on his state conviction, and it is therefore unnecessary to explore Eleventh Circuit law on the matter. Moreover, if the government is correct in its assertion that the court's sentence contravened Eleventh Circuit law, it should have appealed the

---

**6.** Although neither party addressed the issue, we also think it relevant that had the sentencing court not adjusted for the time served on Ruggiano's state sentence, a "disparity" would have resulted in that Ruggiano's total sentence for both crimes would have been longer than had the sentences for the different offenses been imposed at the same time under the Guidelines. *Rios,* 201 F.3d at 267 (considering it relevant that the sentencing court had "intended to correct the disparity that resulted from the happenstance of the dates of the federal and state sentencing proceedings"). This is precisely the type of situation that a § 5G1.3(c) adjustment was designed to address, as we explained in Part II, *supra.*

The base offense level for Ruggiano's federal crime of extortion was 20, *see* U.S.S.G.

§ 2E2.1, which was adjusted to 24 for factors unrelated to his state conviction. The offense level for the most analogous federal offense to his state gambling crime would have been at most 12 and at least 6. *See* U.S.S.G. § 2E3.1. Under the Guidelines' grouping rules, *see* U.S.S.G. §§ 3D1.4, 3D1.5, the gambling offense would not have increased Ruggiano's total offense level or final punishment. Hence, the situation here resembles the situation presented in *Rios* in that the hypothetical guideline calculation allows for Ruggiano's final federal sentence to be adjusted for the time served on his unrelated state sentence so as not to make him serve a combined sentence that would be longer than if each crime were a federal crime for which he was sentenced simultaneously.

sentence directly to the Court of Appeals for the Eleventh Circuit.[7]

Even were we to import Eleventh Circuit law, however, it is, as far as we can tell, inconclusive on the issue of whether a sentencing court may adjust for time served on a pre-existing state sentence under § 5G1.3(c). Unlike the Second Circuit in *Fermin*, which we discuss *supra*, the Eleventh Circuit has not definitively declared that adjustments for pre-existing sentences are not permitted under § 5G1.3(c).

The only supporting cases the BOP cites are *United States v. Johnson*, 87 F.3d 1257 (11th Cir.1996), and *United States v. Ballard*, 6 F.3d 1502, 1506 (11th Cir.1993), neither of which, the BOP concedes, necessarily shows that adjustments for pre-existing sentences under § 5G1.3(c) are prohibited, but rather only that they are not "prefer[red]." Br. of BOP at 31–32; *see also* Br. of BOP at 37 (noting that *Johnson* only "suggests" that such adjustments are not authorized). In *Johnson*, the defendant argued that the sentencing court should have granted him credit for time served on his state sentence. In just one paragraph that lacked any thorough analysis, the Eleventh Circuit rejected the defendant's argument by noting that the sentencing court did not shirk its responsibilities under § 5G1.3(c) by refusing to grant credit. The *Johnson* Court never

stated, however, that the sentencing court would have been prohibited from adjusting for time served on a pre-existing state sentence under § 5G1.3(c). It simply was satisfied that in the case before it, no such adjustment was required. While the Eleventh Circuit to our knowledge has never explicitly authorized such adjustments, we hardly read *Johnson* as prohibiting them altogether. At best for the BOP, Eleventh Circuit law is inconclusive on this point, which only increases our hesitation to import it for purposes of construing what the sentencing court intended here.[8]

### Conclusion

For the foregoing reasons, we hold that the BOP's failure to implement the sentence imposed by the sentencing court mandates habeas corpus relief under § 2241. *See Rios*, 201 F.3d at 270. Accordingly, we will vacate the District Court's order denying Ruggiano's petition and remand with instructions that the District Court grant the petition and direct the BOP to credit Ruggiano with the 14 months he spent in detention prior to the imposition of sentence on his federal conviction.

---

**7.** Of course, in the government's defense, if its arguments in the case at bar represent accurately its understanding of the sentence at the time at which direct appeal could have been taken, the government would have seen no need to appeal, for it presumably considered the granting of credit to Ruggiano as surplusage and nonbinding. However, to the extent that there was apparent ambiguity in the sentence, the government ought to have appealed.

**8.** As a final point of appeal, Ruggiano alleges a claim based on *Santobello v. New York*, 404

U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). By opposing an adjustment for the time served on his state conviction, Ruggiano contends, the government is breaching the conditions of his plea agreement, which stated that "The United States will not oppose the defendant's motion to have the instant offense run concurrent with the state sentence which the defendant is presently serving." [A34.] Because we find that Ruggiano is entitled to relief for the reasons stated in the text, we decline to address whether his *Santobello* claim has any merit.