

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-29-2007

# Barner v. Williamson

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3351

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Barner v. Williamson" (2007). *2007 Decisions*. Paper 1062.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1062

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 06-3351
_____

BRIAN K. BARNER,

Appellant

v.

WARDEN TROY WILLIAMSON

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 05-cv-01127)
District Judge: Honorable Richard P. Conaboy
_____

Submitted Under Third Circuit LAR 34.1(a)
May 3, 2007

Before: RENDELL, HARDIMAN AND COWEN, <u>CIRCUIT JUDGES</u>.

(Filed   May 29, 2007   )

_____

OPINION

_____

PER CURIAM

 Brian Barner appeals from the order of the United States District Court for the

Middle District of Pennsylvania denying his petition for writ of habeas corpus under 28

U.S.C. § 2241. Barner, a federal prisoner who was formerly incarcerated at the Federal Correctional Institution in Allenwood, Pennsylvania ("FCI-Allenwood"), challenged his confinement in administrative detention, the initiation of that confinement through a detention order, and the disciplinary proceedings whereby he was sanctioned with a loss of 13 days good time credit, a 15-day term in disciplinary segregation, and a loss of commissary and visitation privileges for six months. For the reasons that follow, we will affirm the order of the district court.

Barner was placed in the prison's Special Housing Unit ("SHU") in May 2003 pending investigation into an unrelated disciplinary infraction. On July 18, 2003, another SHU resident overdosed on medication, and correctional officials opened an investigation into that matter. As part of that investigation, officials searched that inmate's cell and retrieved several notes indicating that other SHU inmates had provided the pills. Corrections officials questioned Barner as well as several other inmates concerning their possible involvement and seized some of Barner's personal property, including a prescription bottle. Barner began serving a disciplinary segregation sentence on an unrelated charge on August 7, and then, on August 20, officials issued a detention order to Barner notifying him that he would remain on administrative detention status pending the investigation of the July 18 incident. On November 13, 2003, the investigation into the overdose incident was closed and officials issued a misconduct report to Barner charging him with misusing authorized medication in connection with the overdose. A hearing was held on November 20, 2003, before a disciplinary hearing officer ("DHO").

Barner declined representation and did not call any witnesses on his behalf. The DHO found Barner guilty of the charge and imposed a sanction of a 13-day loss of good time credit, as well as other penalties.

Barner filed a habeas petition in June 2005, alleging several due process violations. He argued that (1) corrections officials did not serve him with a timely administrative detention order, (2) his extended stay in the SHU for 115 days exceeded the Federal Bureau of Prison's ("BOP") regulations and was not authorized by the warden as required under BOP's policy, (3) the November 2003 disciplinary report was untimely issued, and (4) the disciplinary proceedings which resulted in his loss of good time credits did not comport with due process requirements. The district court found that several of Barner's claims were not capable of review under habeas corpus because they did not deal with the fact or duration of his sentence. The court further concluded that corrections officials' actions throughout in his disciplinary proceedings, including the initial filing of the disciplinary report, met due process requirements under Wolff v. McDonnell, 418 U.S. 539 (1974). Barner filed a timely notice of appeal.[1]

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). Our review of the district court's denial of a habeas petition is plenary. See Ruggiano v. Reish, 307 F.3d

---

[1] Barner filed his notice of appeal on the same day that he filed a motion under Federal Rules of Civil Procedure 60(b) in the district court. That motion has now been denied and is the subject of a separate appeal. See Barner v. Williamson, C.A. No. 07-1447.

121, 126 (3d Cir. 2002).[2]  Using this standard of review, we will affirm the district court's order.

Regarding Barner's claims that concern the loss of good time credits, we have carefully reviewed the record and agree with the district court that they are without merit. Barner was entitled to certain procedural protections for his loss of good time credit: (1) an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence; (4) assistance from a representative; and (5) a written decision explaining the evidence relied upon.  Wolff, 418 U.S. at 563-67.  In addition, the decision must have support, but only by "some" evidence in the record.  Superintendent v. Hill, 472 U.S. 445, 454 (1985). Barner does not strenuously contend that he was not afforded the protections under Wolff; rather, the crux of Barner's complaint is that the DHO's decision was not supported by "some" evidence.  We do not agree.

In his report,[3] the DHO noted that he relied upon several different types of

---

[2] We also agree that Barner has properly exhausted his administrative remedies.  See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996).

[3] Barner makes much of the fact that, in response to Freedom of Information Act requests, he received two different copies of the DHO's report, one of which notes the inclusion of an investigating officer's memorandum while the other does not.  On appeal, Barner vigorously opposes the district court's reliance on the version of the DHO report that the warden maintained was the "final" report.  But the information from the investigating officer's memorandum had apparently already been made a part of the record, so the substance of that evidence–that Barner had admitted writing a note to the overdosed inmate and that he admitted providing the medication–was already contained in the DHO's "draft" report.  The differences between the two versions are negligible. Practically speaking, using either version of the report, there is ample evidence to support

evidence: the statements by an investigating officer contained in the incident report, statements in a memorandum from an intelligence officer, and Barner's own admission when questioned by the DHO at the hearing. Specifically, both of the investigating officials reported that Barner had written a note to the overdosed inmate recovered from the overdosed inmate's cell in which he stated: "Chucky, . . . these are Teretol, they are like Elavil only not quite as strong." Barner had a prescription for Teretol. Barner admitted that he wrote the note when questioned by one of the officials. Furthermore, the DHO report reflects that Barner admitted the charge when he was questioned at the hearing, and that he elaborated by saying that he gave the other inmate his medication.[4] We find that this certainly provides "some" evidence to support the DHO's finding and meets the criteria of Hill.

Finally, Barner contends that the November disciplinary report was untimely issued under BOP regulations. That provision provides: "Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident." 28 C.F.R. § 541.15(a). In this instance, prison officials confiscated items from Barner's cell and questioned him on July 19, a day after the overdose incident. However, officials did not issue the charge against Barner until November 13, 2003,

---

the DHO's finding. See Hill, 472 U.S. at 454.

[4] Barner now contends that he never made such an admission to the investigating officer or the DHO.

which was six hours after the investigation into the overdose closed.

Certainly, Barner cannot claim that officials violated the procedures required by Wolff, i.e., that an inmate receive written notice of the charge(s) 24 hours before a hearing, because Barner clearly had adequate and proper notice before the hearing. Rather, Barner contends that a violation of 28 C.F.R. § 541.15(a) constituted a deprivation of due process.[5] In making this claim, Barner assumes that once he was interviewed and his property was confiscated, the investigation should have concluded, but he ignores the fact that other inmates were also suspects in the investigation. We agree with the district court's conclusion that no actionable due process claim occurred as there was no unwarranted delay in issuing the charge within hours of the close of the investigation in November. [6]

---

[5] Notably, the regulation states that "ordinarily" the officials shall provide the inmate with a charge within 24 hours of knowledge of his involvement. See 28 C.F.R. § 541.15(a). Ordinarily, prison officials are given wide discretion to adopt and execute their policies needed to maintain internal order. See Bell v. Wolfish, 441 U.S. 520, 547 (1979). Moreover, while Barnes would have a liberty interest in the good time credits, Barnes has not shown that the regulation specifying the time at which a person must be notified of the charge either itself creates a liberty or property interest, or that its violation necessarily abridges the constitutional protections established in Wolff. See, e.g., Sandin v. Connor, 515 U.S. 472, 487 (1995).

[6] We will not disturb the district court's determination that Barner's first and second claims dealing with his administrative detention and the initiation of that detention were incapable of review under § 2241 as challenges to the "execution" of Barner's sentence, or whether they should have been asserted in a § 1983 complaint. See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242 n.5 (3d Cir. 2005). Barner has already filed a separate civil rights complaint, which alleges in part that corrections officials untimely served the detention order, and the district court has already issued an opinion on the merits of the claims in that action. See Barner v. Williamson, M.D. Pa. Civ. No. 05-cv-001972 (Order, Mar. 27, 2007). Even if the claims were cognizable on habeas review, we

We will affirm the district court's order denying Barner's petition for writ of

habeas corpus.

---

would deny them because they lack merit.  <u>See</u> <u>Griffin v. Vaughn</u>, 112 F.3d 703, 708 (3d Cir. 1997) (continued detention in administrative custody did not deprive prisoner of liberty interest triggering federal procedural due process rights).