

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2009

# Daniel Escribano v. Paul Schultz

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2999

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

## Recommended Citation

"Daniel Escribano v. Paul Schultz" (2009). *2009 Decisions*. Paper 1336.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1336

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2999
_____

DANIEL REYES ESCRIBANO,
                                        Appellant

v.

PAUL SCHULTZ, WARDEN

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 07-cv-03204)
District Judge:  Honorable Robert B. Kugler

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 2, 2009
Before: MCKEE, HARDIMAN and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 21, 2009)

_____

OPINION
_____

PER CURIAM

    Daniel Reyes Escribano appeals an order of the United States District Court for the

District of New Jersey denying his habeas petition filed pursuant to 28 U.S.C. § 2241 and

his motion for reconsideration of that order.  We will vacate and remand for further

proceedings.

In June 1997, Escribano was sentenced in Carolina, Puerto Rico, on eleven counts of weapons violations, to a total of 12 years imprisonment. The sentence was suspended and Escribano was placed on probation. In December 1998, Puerto Rican authorities charged Escribano with new weapons offenses; he was arrested by local authorities on January 28, 1999. On September 21, 1999, Escribano was sentenced to serve six months in prison on each count of the new weapons charges, to run concurrently with each other but consecutive to any other sentence.[1] Three days later, on September 24, 1999, Escribano's parole was revoked and he was ordered to serve the 12-year sentence imposed in 1997. ("The Puerto Rican sentences").

Meanwhile, on February 2, 1999, Puerto Rican authorities transferred Escribano into federal custody pursuant to a writ of habeas corpus ad prosequendum. In February 2003, Escribano pled guilty in the United States District Court for the District of Puerto Rico to conspiracy to interfere with commerce by extortion. See 18 U.S.C. § 1951(a). The federal offense was unrelated to the Puerto Rican weapons violations.[2] On May 29, 2003, Escribano was sentenced to 151 months in prison "to be served concurrently with

_____

[1] Escribano claimed that Puerto Rico relinquished custody of him on September 21, 1999, because he was sentenced to time served on the new weapons charges. The District Court properly found that Escribano failed to adequately substantiate this allegation.

[2] The sentencing court's judgment and Bureau of Prisons' ("BOP") records both indicate that the offense leading to the § 1951(a) conviction took place no later than February 13, 1998. The presentence report states that the more recent Puerto Rican weapons violations occurred on December 19, 1998.

2

the sentence being served in local court. Time already served in connection with this offense shall be credited." The Bureau of Prisons ("BOP") determined that Escribano's sentence commenced on May 29, 2003, and granted him credit from January 28, 1999 (the date he was arrested by local authorities) through September 20, 1999 (the day before he was sentenced by the local court).[3]

After properly exhausting his administrative remedies, Escribano filed the present petition for a writ of habeas corpus in the United States District Court for the District of New Jersey. He claimed that his federal sentence should be credited for the approximately 44 months he served from the date he was sentenced in local court on the new weapons charges (September 21, 1999) through the date he was sentenced in federal court (May 29, 2003). Escribano relied on the sentencing court's written judgment and two pages of the sentencing hearing transcript, which he believed demonstrated an intent to adjust his sentence under United States Sentencing Guideline § 5G1.3(c). The District Court denied relief, finding no clear intention by the sentencing court to adjust Escribano's sentence to account for time already served on the Puerto Rican sentences. Escribano submitted a motion for relief under Federal Rules of Civil Procedure 59(e) and 60(b), which the District Court denied. Escribano appealed.[4]

---

[3] Escribano remained in federal custody until October 3, 2003, when he was returned to Puerto Rican authorities. In June 2005, he completed his Puerto Rican sentences and was transferred to federal custody pursuant to a detainer.

[4] We have jurisdiction pursuant to 28 U.S.C. § 1291 and 2253(a), and exercise plenary
(continued...)

Where a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms run consecutively unless otherwise ordered. See 18 U.S.C. § 3584(a). In addition, under 18 U.S.C. § 3585(b), the BOP cannot credit a defendant for time served prior to commencement of a federal sentence if such time has already been credited towards another sentence. See Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2000). But, at the time Escribano was sentenced, the law in this Circuit provided that the sentencing court could award a sentence reduction under § 5G1.3(c) to account for time spent in custody on a prior conviction.[5] See Ruggiano v. Reish, 307 F.3d 121, 131 (3d Cir. 2002).[6] The sentencing court's authority under § 5G1.3(c) to reduce a sentence is distinct from the BOP's authority under § 3585(b) to credit a sentence, even though the benefit to the defendant may be the same. See id. at

_____

[4](...continued)
review over the District Court's legal conclusions. See Ruggiano v. Reish, 307 F.3d 121, 126 (3d Cir. 2002).

[5] Although we recognize that the controlling legal authority for the sentencing court was First Circuit jurisprudence, we need not view the sentencing court's authority solely in the context of First Circuit law. See Ruggiano, 307 F.3d at 135-36.

[6] In Ruggiano, we stated that imposing a retroactively concurrent sentence under § 5G1.3 is permissible and is properly termed an adjustment, rather than a credit or downward departure. 307 F.3d at 131, 133. But a 2003 amendment to the 5G1.3 Application Notes provided that subsection (c) does not authorize an adjustment for time served on a prior undischarged term of imprisonment, and that a sentencing court may consider a downward departure in extraordinary cases. See U.S. Sentencing Guidelines Manual § 5G1.3 app. note 3(E). This amendment became effective November 1, 2003, after Escribano's federal sentence was imposed. To the extent the amendment may be viewed as a clarifying amendment that is retroactively applicable, see United States v. Diaz, 245 F.3d 294, 301 (3d Cir. 2001), we would reach the same result here.

4

131-33.

To determine what type of credit the sentencing court intended to apply in Escribano's case, "the appropriate starting point is to ascertain the meaning that we should ascribe to the sentencing court's directives." Rios, 201 F.3d at 264. When the oral pronouncement of sentence and written sentence are in conflict, the oral sentence prevails. See United States v. Chasmer, 952 F.2d 50, 52 (3d Cir. 1991). When there is no conflict, however, "but rather only ambiguity in either or both [sentence pronouncements], we have recognized that the controlling oral sentence 'often [consists of] spontaneous remarks' that are 'addressed primarily to the case at hand and are unlikely to be a perfect or complete statement of the surrounding law.'" Ruggiano, 307 F.3d at 133 (quoting Rios, 201 F.3d at 268 (citation omitted)). Importantly, "[i]n interpreting the oral statement, we have recognized that the context in which this statement is made is essential." Id. at 134.

In Ruggiano, we concluded that the sentencing court exercised its authority to adjust a sentence for time served on a state conviction. The defendant had specifically requested the application of § 5G, and the sentencing court stated at the hearing that it would recommend that the federal sentence "be served concurrently and that [the defendant] receive credit for the amount of time that he had served there." Ruggiano, 307 F.3d at 131 (citation omitted). The written judgment stated, "Sentence imposed to run concurrent with State sentence. Defendant to receive credit for time served." Id.

5

In this case, the District Court noted that, "[o]n its face, it would seem that the language of the Judgment and Commitment Order tracks the sentencing language used in the Ruggiano case." The District Court concluded, however, that the two pages of the sentencing transcript that Escribano provided were "not so clear." In that portion of the transcript, Escribano's attorney asks that Escribano receive credit under § 3585(b) for "the time spent in official detention waiting for the sentence to be credited in this sentence, which is from February 2, 1999." The sentencing judge replied, "That credit is available for detention in this case; that is Criminal Number 99-44. If he's being detained for other cases it doesn't count, but for this case, it does count." After counsel noted that "He's detained for this case," the sentencing judge stated, "That time served will be credited."[7] We agree with the District Court that this brief colloquy is insufficient to demonstrate the sentencing court's intent to adjust Escribano's sentence under § 5G1.3(c).

But Escribano attached to his appellate brief a portion of the Plea Agreement and additional pages – although not a full version – of his sentencing hearing transcript. According to the more complete copy of the transcript, Escribano's attorney asked about a concurrent sentence prior to seeking credit under § 3585(b):

[ESCRIBANO'S ATTORNEY]: [W]e move the Court to impose the sentence

---

[7] The sentencing court was not permitted to grant a credit under § 3585(b). See United States v. Wilson, 503 U.S. 329, 334 (1992). That authority rests instead with the BOP. Id.

concurrently with a [local] sentence that this client is serving right now. That is part of the Plea Agreement that has been entered in this case.

THE COURT: [I]s that right, is that part of the Plea Agreement; that the sentence be handed out concurrently with the local sentence?

[THE PROSECUTOR]: There is a paragraph, Your Honor, in the recommendation that the United States would not oppose, I believe is the way that's worded.

THE COURT: Very well. Anything else?

Later, after the sentencing court repeated its order that "Time already served in connection with the instant offense shall be credited," Escribano's attorney returned to the issue of a concurrent sentence:

[ESCRIBANO'S ATTORNEY]: Judge, as to the concurrent sentence –

THE COURT: No objections.

[THE PROSECUTOR]: Your Honor, it's pursuant to the Plea Agreement –

THE COURT: Very well. The sentence hereby imposed shall run concurrently with the sentence being served by defendant in the local courts.

The Plea Agreement provided that the "United States will not oppose that the sentence to [be] imposed in the instant case be served concurrently with any pending sentence."

We direct that the portions of the Plea Agreement and sentencing hearing transcript which are attached to Escribano's appellate brief become a part of the record on appeal. See Federal Rule of Appellate Procedure 10(e)(2)(C). Because the District Court did not have the benefit of this material when it rejected Escribano's claim that the sentencing court intended to adjust his federal sentence under § 5G1.3(c), we will vacate the District Court's orders and remand for the District Court to consider the effect of this evidence or, if it deems it necessary, to obtain a complete copy of the sentencing hearing

7

transcript.[8]  See Castle v. Cohen, 840 F.2d 173, 180 n.12 (3d Cir. 1988) (granting motion

under Rule 10(e) and remanding for district court to consider effect of new evidence); see

also Ruggiano, 307 F.3d at 134 (recognizing that "that the context in which [the

sentencing court's oral pronouncement] is made is essential.").

---

[8] We express no opinion on whether the sentencing court intended to award a
retroactively concurrent sentence reduction under § 5G1.3(c).