

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-1999

# USA v. Dorsey

Precedential or Non-Precedential:

Docket 98-5250

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation
"USA v. Dorsey" (1999). *1999 Decisions.* Paper 25.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/25

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 29, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-5250

UNITED STATES OF AMERICA,

v.

LORENZO DORSEY, aka LAMONT WHITE,
aka HENRY JACKSON,
        Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. Criminal No. 96-cr-00461-1)

ARGUED OCTOBER 29, 1998

BEFORE: STAPLETON and LEWIS, Circuit Judges,
and CALDWELL,* District Judge.

(Filed January 29, 1999)

        Chester M. Keller (ARGUED)
        Office of Federal Public Defender
        972 Broad Street
        Newark, NJ 07102

         Attorney for Appellant

_____

* Honorable William W. Caldwell, United States Senior District Judge for
the Middle District of Pennsylvania, sitting by designation.

George S. Leone
Shawna H. Yen (ARGUED)
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102

  Attorneys for Appellee

OPINION OF THE COURT

CALDWELL, District Judge.

Lorenzo Dorsey appeals from the district court's refusal at sentencing to follow commentary to U.S.S.G. S 5G1.3(b) in application note 2 to the guideline. Under that note, the court could have reduced Dorsey's federal sentence by a certain amount of time he had spent in state custody, thereby essentially giving him credit for that period of imprisonment before the federal sentence was imposed. Dorsey also asserts that the district court's action violates the double jeopardy clause because by refusing him credit the United States would be punishing him twice for the same offense.

Because the district court erred in deciding that only the Bureau of Prisons has the authority to grant sentencing credits, we will reverse and remand for resentencing, and direct that the court comply with the procedure set forth in the application note. Our resolution of this guidelines issue renders consideration of the double jeopardy claim unnecessary.

I.

On May 7, 1996, the appellant was arrested in Newark, New Jersey, and charged with illegal possession of a firearm. He was sent to a New Jersey state prison the next day for a parole violation arising from this firearms offense. Both the United States and New Jersey decided to prosecute him for the offense. On August 21, 1996, he was indicted in federal court under 18 U.S.C. S 924(g)(1). On September 18, 1996, he was indicted in a New Jersey

2

court. On October 8, 1996, the appellant was released into the community from the sentence he was serving in state prison for the parole violation. On April 11, 1997, he was arrested by state authorities and incarcerated in a New Jersey state prison. Federal authorities lodged a detainer against him.

Appellant pled guilty to the state charge. On August 22, 1997, he was sentenced in state court to five years imprisonment. In sentencing the appellant, the state court credited him with the 134 days he had spent in state custody from April 11, 1997, to the date of sentencing.

The appellant also pled guilty to the federal offense. On May 12, 1998, he was sentenced to 115 months. Invoking application note 2 to U.S.S.G. S 5G1.3(b), the appellant sought credit for the entire time he had spent in state prison before his federal sentencing. This was a period of about 13 months, from April 11, 1997 (the date he was arrested on both the federal and state charges arising from the May 1996 firearms offense) to May 12, 1998, the date of his federal sentencing. However, the court refused the appellant's request, ruling that it had no authority to do so and that only the Bureau of Prisons (BOP) could give credit for the time he was incarcerated before imposition of sentence. As required by U.S.S.G. S 5G1.3(b), the district court did order that the sentence run concurrently with the state sentence.1 And, as a concession to the appellant, the court noted on its judgment order that it had not decided the issue of sentence credit and was leaving it to the BOP.

Dorsey then took this appeal. While the appeal was pending, the BOP gave the appellant credit for a part of the

_____

1. Section 5G1.3(b) provides, in pertinent part, as follows:

> If . . . the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

Here the undischarged term of imprisonment was the New Jersey sentence for the same firearms offense that was the subject of the federal offense.

13-month period. The BOP gave him credit for the following periods of prefederal-sentencing incarceration, totaling about four months and two weeks: (1) May 7, 1996, the date of his apprehension on the firearms offense (for which he began serving a state parole-violation term the next day), and (2) a period from April 11, 1997, the date he was arrested on the federal and state firearms charges, to August 21, 1997, the day before his state-court sentencing. However, it refused to give him credit for the approximately 10-month period between his state sentencing, August 22, 1997, and his federal sentencing, May 12, 1998. The parties agree that no credit was given for the latter period because 18 U.S.C. S 3585(b) prohibits the BOP from granting credit for time "that has been granted against another sentence," and this 10-month period was time serving his state sentence credited by New Jersey. See The Bureau of Prisons' Sentence Computation Manual at 1-17 ("credit will not be given for any portion of time spent serving another sentence [until a state facility is deemed federal which may only occur after the federal sentencing]").

II.

Initially, we note that U.S.S.G. S 5G1.3(b) itself is not at issue here. As indicated by its language, that guideline section only requires that the sentencing court run the federal sentence concurrently to the undischarged term of the other sentence. The district court complied with this guideline and made the federal sentence concurrent with the New Jersey sentence.

The controversy arises from application note 2 to section 5G1.3(b), the commentary to that guideline section, which provides further guidance for the sentencing court in imposing the concurrent sentence. On its face, application note 2 would require, at least partially, the result the appellant sought at sentencing. The application note, captioned "Adjusted concurrent sentence--subsection (b) cases," provides:

> When a sentence is imposed pursuant to subsection
> (b), the court should adjust the sentence for any period
> of imprisonment already served as a result of the

4

conduct taken into account in determining the guideline range for the instant offense if the court determines that period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons.

The note then immediately follows with an example:

The defendant is convicted of a federal offense charging the sale of 30 grams of cocaine. Under S 1B1.3 (Relevant Conduct), the defendant is held accountable for the sale of an additional 15 grams of cocaine, an offense for which the defendant has been convicted and sentenced in state court.

Continuing with the example, the note further assumes that the guideline range is 10 to 16 months and that the defendant was sentenced in state court to nine months on which he has already served six months. In these circumstances, the note advises the district court that, if it decides that a 13-month federal sentence is appropriate, it should shorten that sentence to seven months and, in this way, give credit on the federal sentence for the six months already served on the state sentence. The application note closes by advising the sentencing court that it should note on the sentencing order what it has done so that the adjustment is not confused with a departure from the guideline range but rather recognized as a "credit[ ]" under S 5G1.3(b) for time served "that will not be credited to the federal sentence under 18 U.S.C. S 3585(b)." (brackets added).

In the instant case, if the district court had applied application note 2, while it could not have granted the full credit the appellant sought, it could have granted a sentence adjustment of some 10 months, representing a credit for the period between the date of the appellant's state sentencing, August 22, 1997, and the date of his federal sentencing, May 12, 1998. This represents a period of imprisonment that would not have been credited to the federal sentence by the BOP, as the BOP's later decision confirmed, because it represented time that the appellant was already serving on his state sentence.

5

Thus, we would have to reverse and remand for resentencing to allow for this credit unless the government is correct that application note 2 is invalid and that the district court correctly refused to follow it. Our review of the district court's legal interpretation of section 3585(b) and the guidelines is plenary. See United States v. Williamson, 154 F.3d 504 (3d Cir. 1998). We turn now to the government's arguments.

The government first contends that the district court was correct because under 18 U.S.C. S 3585(b), as construed by the Supreme Court in United States v. Wilson, 503 U.S. 329, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), only the Attorney General (by way of delegation to the BOP) has the authority to award credit for time served before federal sentencing. Section 3585(b) states as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. S 3585(b). In Wilson, the Supreme Court held that, despite the ambiguity as to who was to award credit for time served, only the BOP has the authority under section 3585(b) to award such credit. However, the government reads too much into Wilson.

The government argues that Wilson controls here because Wilson also dealt with federal and state sentences arising from the same criminal episode. However, it is not apparent from Wilson that Wilson did deal with such related offenses. The Supreme Court did not describe the offenses as being related. It merely stated that the defendant had been arrested on federal and state charges and had been held for a time in state custody on both sets of charges. Additionally, the lower court opinion indicates that they

6

were unrelated offenses. See United States v. Wilson, 916 F.2d 1115, 1116 (6th Cir. 1990) (after noting the federal arrest for attempted bank robbery, noting that the defendant had been arrested by state authorities "apparently in connection with various other robberies") (emphasis added). Wilson does not apply here because it did not deal with the situation of a federal court exercising its discretion to impose a concurrent sentence and how to make that sentence truly concurrent to a sentence for a related offense, the subject of application note 2.2

The government next argues that the district court acted properly because it did comply with U.S.S.G. 5G1.3(b) by imposing a federal sentence concurrent with the state sentence. The government points out that guidelines section 5G1.3(b), as opposed to application note 2, only requires that the sentence for the instant offense "be imposed to run concurrently to the undischarged term of imprisonment"; it says nothing about adjusting the federal sentence to allow credit for prefederal sentencing detention. This argument is of no moment because the appellant is not relying on section 5G1.3(b) alone but on the commentary to that section in application note 2. We therefore turn to the government's arguments against the validity of application note 2.

The government contends that application note 2 is invalid for three reasons. First, it conflicts with section 3585(b) which, in the government's view, confers sole authority on the BOP to award custody credit. Second, the

_____

2. For the same reason other cases the government cites are distinguishable. United States v. Brann, 990 F.2d 98 (3d Cir. 1993), dealt solely with whether the court rather than the BOP should award credit for presentencing home detention. In accord with Wilson, we held that the BOP was responsible. United States v. Pineyro, 112 F.3d 43 (2d Cir. 1997), and United States v. McGee, 60 F.3d 1266 (7th Cir. 1995), dealt with unrelated state sentences. United States v. Cobleigh, 75 F.3d 242 (6th Cir. 1996), dealt with credit for a period of time the defendant was released on his own recognizance. United States v. Jenkins, 38 F.3d 1143 (10th Cir. 1994), dealt with credit for a period of in-home detention. United States v. Moore, 978 F.2d 1029 (8th Cir. 1992), dealt with credit for time served in state custody on state charges that were subsequently dismissed.

7

provisions of application note 2 exceed the statutory authority of the Sentencing Commission. Third, upholding the note and allowing sentencing courts to grant credit along with the BOP will result in an unworkable scheme of shared authority.

In its first argument, the government contends that the conflict between section 5G1.3(b) and section 3585(b) arises because application note 2 allows a sentencing court to grant credit when in light of section 3585(b) only the BOP has the authority to do so. The government acknowledges that generally a sentencing court must follow commentary to the Guidelines, see Stinson v. United States, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), but asserts here that the commentary conflicts with section 3585(b) and is therefore invalid. Id. at 45, 113 S.Ct. at 1919, 123 L.Ed.2d at 608. See also United States v. Higgins, 128 F.3d 138, 141 (3d Cir. 1997) ("[a] Guideline cannot trump a statute with which it conflicts.") (brackets added).

We reject the government's position. In the instant case, the government would compare application note 2 solely to section 3585(b), but the situation is more complex than that. Under 18 U.S.C. S 3584(a), a district court has the authority to impose a concurrent sentence, but section 3584(b) requires the court to consider the factors listed in 18 U.S.C. S 3553(a). In turn, the latter section requires the court to consider "any applicable guidelines or policy statements issued by the sentencing Commission," as the Commission noted in its "Background" commentary to section 5G1.3. See 18 U.S.C. S 3553(a)(4)(A). Section 5G1.3 was promulgated under the Sentencing Commission's authority, under 28 U.S.C. S 994(a)(1)(D), to issue guidelines for the use of sentencing courts in determining whether multiple sentences "should be ordered to run concurrently or consecutively." Application note 2 is commentary to subsection (b) of guidelines section 5G1.3.

We are thus not confronted with a bare conflict between statutory section 3585(b) and guidelines section 5G1.3(b), but with a potential conflict between the BOP's authority under section 3585(b) to grant credit for presentencing detention and the sentencing court's authority to impose a concurrent sentence. And the real issue is whether the

8

sentencing court's authority must extend beyond the mere imposition of a concurrent sentence to the authority to impose a truly concurrent one, that is, a sentence that is not frustrated by the happenstance of when a defendant is sentenced in state and federal court. We believe a sentencing court has that authority under section 3584(a) and that application note 2 facilitates the court's authority. Moreover, as written, there is no conflict between the note and section 3585(b) because a district court can only award credit when the BOP will not do so.

To begin with, the Supreme Court has noted that the overall purpose of section 5G1.3 is "to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." Witte v. United States, 515 U.S. 389, 405, 115 S.Ct. 2199, 2209–10, 132 L.Ed.2d 351, 367 (1995). In Witte, the Court also stated:

> There are often valid reasons why related crimes committed by the same defendant are not prosecuted in the same proceeding, and S 5G1.3 of the Guidelines attempts to achieve some coordination of sentences imposed in such situations with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time (i.e., had all of the offenses been prosecuted in a single proceeding). See USSG S 5G1.3, comment., n. 3.

Id. at 404–05, 115 S.Ct. at 2208, 132 L.Ed.2d at 367. In Witte the Court was discussing the 1992 version of the commentary, not the 1995 version that we are dealing with. However, the 1995 version does not differ materially from the current application note. The major difference is that application note 2 now explicitly recognizes that the court cannot grant credit when the BOP will do so.

Our position is supported by other courts that have considered the issue. In United States v. Kiefer, 20 F.3d 874 (8th Cir. 1994), the Eighth Circuit held that a sentencing court had authority under section 5G1.3(b) to grant a defendant credit on his federal sentence for all the time he served, before the federal sentencing, in Minnesota state

custody on a related state charge. Under 18 U.S.C. S 924(e)(1), the defendant was subject to a mandatory minimum federal sentence of 15 years (180 months). Under his plea agreement, he could not be sentenced to more than 188 months. He had spent 14-and-one-half months in state custody. The district court applied section 5G1.3(b) but believed that it could not reduce the sentence below the mandatory minimum. Hence, instead of a sentence of 173-and-one-half-months, it imposed a sentence of 180 months.

On appeal, the Eighth Circuit first rejected the government's argument that the defendant was seeking a sentence credit and hence under Wilson had to seek relief from the BOP. The court stated:

> [I]n this appeal Kiefer seeks to invoke a Guidelines provision to reduce his federal sentence. That is a question for the sentencing court, and we find nothing in Wilson suggesting that the Attorney General's authority under S 3585(b) limits a sentencing court's power to apply S 5G1.3 of the Guidelines. Therefore, we agree with the district court that it had jurisdiction to consider this S 5G1.3 issue.

Id. at 875-76 (brackets added). The court also noted that: "In general, S 5G1.3 is intended to result in a federal sentence `that most nearly approximates the sentence that would have been imposed had all the sentences been imposed at the same time.' S 5G1.3, comment. (backg'd)." Then, turning to the precise issue presented, whether a mandatory minimum sentence prevents full application of section 5G1.3(b), the court stated:

> Section 924(e)(1) was enacted after the Sentencing Reform Act. The Reform Act provides that the district courts must determine whether sentences should be concurrent or consecutive. See 18 U.S.C.S 3584(b). In doing so, the court "shall consider," among other factors, "the kinds of sentence ... set forth in the guidelines." 18 U.S.C. S 3553(a). Section 5G1.3 is part of that sentencing regime. Since in this example Kiefer was "imprisoned" by Minnesota for the identical firearms offense, we conclude that there would be no violation of the plain language of S 924(e)(1), and that

10

> these various sentencing statutes would be properly
> harmonized, if S 924(e)(1) were construed to permit the
> sentencing court to give Kiefer a sentence credit in the
> form of a reduced federal sentence under S 5G1.3(b).

Id. at 876. The court remanded so that the sentencing
court could exercise its discretion to award a full credit for
the time spent in state custody. Kiefer was followed in
United States v. Drake, 49 F.3d 1438 (9th Cir. 1995), a case
also dealing with a mandatory minimum sentence under
section 924(e)(1).

We adopt Kiefer's reasoning. Guidelines section 5G1.3(b)
and application note 2 harmonize the court's discretion
under section 3584 to make a federal sentence concurrent
with other terms of imprisonment and the BOP's authority
under section 3585(b) to award credit for presentence
custody. There is no conflict between the two because
application note 2 restricts the credit the sentencing court
can award to time that will not be awarded by the BOP.
And the court must be able to award this credit to make
the sentences truly concurrent. Otherwise, the concurrent
sentencing principles of section 3584 would be frustrated.
See Kiefer, 20 F.3d at 876.

The government criticizes Kiefer and Drake as dealing
with the issue in dicta and in a conclusory fashion.
However, Kiefer's ruling on this issue was a necessary part
of its decision to reverse the district court and it made plain
why it ruled as it did, to harmonize the sentencing court's
authority with that of the BOP.

In regard to the government's second argument, based on
the foregoing, it follows that the promulgation of application
note 2 did not exceed the Commission's authority since it
effectuates the sentencing court's discretion to impose a
concurrent sentence. As noted above, under 18 U.S.C.
S 3584(a) the sentencing court has the discretion to impose
a concurrent sentence. In doing so, it must consider the
factors listed in 18 U.S.C. S 3553(a). Among these factors
are guidelines and commentary from the Sentencing
Commission. Under 28 U.S.C. S 994(a)(1)(D), the
Commission has the authority to promulgate guidelines for
the determination of whether a sentence shall run

11

concurrently or consecutively. A sentence cannot be concurrent if the random chance of when multiple sentences are imposed results in a defendant serving, contrary to the intent of the sentencing court, additional and separate time on one sentence that was meant to be served at the same time as another sentence.

As the Supreme Court also indicated, the government's position also introduces a certain fortuity into the sentencing process because under the BOP's interpretation of section 3585(b), credit for time served before imposition of the federal sentence will depend on when the state sentence was imposed. For example, in the instant case, if New Jersey had sentenced the appellant on September 22, 1997, or October 22, 1997, rather than on August 22, 1997, appellant would have received credit on his federal sentence for the additional one- or two-month period because this was time that he was not yet serving on his state sentence and hence allowable as a credit against the federal sentence. Yet, because he was actually sentenced on August 22, 1997, he received a smaller credit. Actual time of imprisonment should not turn on the happenstance of the scheduling of sentencing dates.[3]

The government's final argument is that a scheme of shared authority over sentence credits by the sentencing court and the BOP is unworkable. The government points out that section 5G1.3(b), in allowing the sentencing court to grant a credit for time that will not be credited by the BOP, requires the sentencing court to predict what credit will be awarded by the BOP. The government argues that this will not always be readily apparent to a sentencing court but that the BOP can be accurate in its award of credit because of its administrative expertise and because it has the assistance of its Sentencing Computation Manual.

As an example, the government argues that in the instant case, despite the language on the face of section 3585(b)

_____

3. We also reject the government's contention that, because the example used concerns relevant conduct, the note applies only to credit for relevant conduct. The example is just an example. The note broadly refers to credit for time that will not be credited by the BOP.

prohibiting credit for time served on another sentence, the BOP did award the appellant credit for about four months and two weeks, essentially the period between the date of his arrest on the charges and the date of his New Jersey sentencing, even though the appellant received credit for this time on his New Jersey sentence. These are so-called Willis credits, named after Willis v. United States, 438 F.2d 923 (5th Cir. 1971). The government also points out that the BOP refused to award credit for the additional 10-month period because the BOP manual forbids it.

The government stresses that a district court, in relying only on section 3585(b) could easily make the wrong prediction as to what credit will be awarded. Further, "[e]ven if the district courts had the time or resources to decipher the Bureau of Prison's voluminous and highly technical Sentencing Computations Manual," (government's brief at p. 28), the government argues that the court's lack of expertise will sometimes lead to a mistake, a mistake that would be compounded because neither the government nor the defendant would have any recourse under application note 2 from such an error.

We reject this argument. Although the government contends that the computation of sentencing credits is fraught with difficulty, the only example it raises is the instant case, which presents a straightforward calculation. Under section 5G1.3(b), the district court does not award a Willis credit (because this is time that will be awarded by the BOP) but does award credit for the remainder of the prefederal sentencing time (because the BOP cannot award this under section 3585(b)). We note that the courts in Kiefer and Drake did not see any difficulty in applying section 5G1.3(b) nor did the courts in United States v. Bell, 28 F.3d 615 (7th Cir. 1994), or United States v. Hicks, 4 F.3d 1358 (6th Cir. 1993), cases in which the courts also applied section 5G1.3(b).

Contrary to the government's position, any error in the section 5G1.3(b) sentence adjustment can be corrected on direct appeal. Under 18 U.S.C. S 3742(a)(2), the defendant can appeal an incorrect application of the sentencing guidelines and under section 3742(b)(2), the government may do the same.

13

III.

For the foregoing reasons, we will vacate the district court's sentencing order and remand with direction that the court follow the dictates of application note 2 to U.S.S.G. S 5G1.3(b) in resentencing the appellant.

14

STAPLETON, Circuit Judge, Concurring:

I join the opinion of the Court. I write separately to note that much of the conflict which the government perceives between S 3585(b) and Application Note 2 to U.S.S.G. S 5G1.3(b) is attributable to its use of the word "credit" to refer to two distinct benefits that a convicted defendant may receive. A sentencing judge is charged with determining the length of any sentence of incarceration to be served. In the course of doing so, it may impose a lesser sentence than it otherwise would because of any number of relevant factors in the case. After a defendant has been sentenced to a term of incarceration, the custodian must determine when the sentence imposed will have been satisfied. In the course of doing so, the custodian may give "credit" against the sentence for such things as presentence detention, good behavior, etc.

In Chapter 35 of Title 18, "giving credit" is used as a term of art referred only to the latter form of benefit. We agree with the Eighth and Ninth Circuit Courts of Appeal that the Supreme Court in Wilson was referring only to the latter form of benefit when it held that only the Bureau of Prisons is authorized by S 3585(b) to "give credit" against a previously imposed sentence. While it is true, as the government stresses, that the effect upon the defendant may be the same whether he receives a sentence shortened to reflect presentence detention or a sentence not so shortened followed by credit for such detention, we cannot ignore the fact that "giving credit" is used as a term of art in S 3585(b) and is not mentioned at all in S 5G1.3(b).

As the opinion of the Court explains, Congress' sentencing scheme assigns to the sentencing judge the task of determining whether the sentence to be imposed shall run consecutively or concurrently with a previously imposed sentence. In the specific situation where the conduct for which a defendant is being sentenced has resulted in a previously imposed sentence, S 5G1.3(b), utilizing the authority granted by S 3584(b), makes a policy choice that the total time served for the conduct not vary depending on the fortuity of when the two sentences are imposed. It accomplishes this by providing (a) that the new sentence will run concurrently with the undischarged term

15

of the prior sentence, and (b) that the new sentence will be reduced by an amount equal to the time previously served on the prior sentence if the Court determines that the Bureau of Prisons will not give credit for such time under S 3585(b).1 We do not find this policy choice unauthorized by the Sentencing Reform Act or inconsistent with Congress' intent that, once a sentence is imposed, the Attorney General or its designee have sole authority to determine when that sentence will be discharged.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

1. Contrary to the government's suggestion, our decision today will not require that district courts master the BOP manual on sentencing credits and predict how it will be applied in a multitude of new situations. Section 3585(b) applies generally to credit for all kinds of pretrial detention and specifically forecloses the BOP from awarding credit for time that has been "credited against another sentence." U.S.S.G. S 5G1.3(b) applies to a limited universe of cases in which the prior detention is attributable to service of a prior sentence that should run concurrently with the one being imposed. In at least the vast majority of S 5G1.3(b) cases, the BOP will be foreclosed from granting a relevant credit because the time previously served will have been credited towards another sentence.

16