

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-29-2003

# USA v. Goodnight

Precedential or Non-Precedential: Non-Precedential

Docket 02-2083

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Goodnight" (2003). *2003 Decisions.* Paper 610.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/610

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-2083
_____

UNITED STATES OF AMERICA

v.

JOHN EDWARD GOODNIGHT
Appellant.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Criminal No. 01-00166)
District Judge: The Honorable Donetta W. Ambrose

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 6, 2003

Before: ROTH, BARRY, and FUENTES, Circuit Judges

(Opinion Filed: April 29, 2003)

_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

Defendant John Edward Goodnight appeals the judgment of conviction and sentence

entered by the District Court after a jury trial on Counts One and Two of his Indictment. Goodnight asserts: (1) that the evidence presented at trial was insufficient to prove that he used or carried a firearm during a drug trafficking crime or possessed a firearm in furtherance of a drug trafficking crime; (2) that the District Court improperly refused to instruct the jury that the gun could not be considered as evidence of the drug charge; (3) that the District Court's method of computing his guidelines offense range resulted in double counting; and, (4) that 18 U.S.C. § 922(g)(1) is unconstitutional because it exceeds the scope of Congress's regulatory authority under the Commerce Clause. We will affirm.

## I. Facts and Procedural Background

The facts are fairly straightforward. In response to complaints that open air drug deals were occurring on Pittsburgh's North Side, four members of the Pittsburgh Police Department's Narcotics Task Force took part in an undercover drug suppression detail on the evening of July 18, 2001. The officers secreted themselves near the lower end of St. Ives Street, a reported area of drug activity. Officer Anthony Moreno, who was hiding behind bushes bordering the fence of a parking lot, watched as a white pickup truck slowly drove up Morrison Street to the intersection of St. Ives Street. Officer Moreno testified that defendant, dressed all in black, then started to run up the street, waiving his arm, yelling "Hey yo; hey yo." App. at 170. The driver stopped, put the truck in reverse and turned down St. Ives Street. Officer Moreno further testified that defendant walked up to the driver's window of the truck, engaged in a short conversation with the two white males inside the truck, then reached into the window with one hand and gave something to the driver.

According to the officer, the driver looked at what he had been handed and gave something to defendant in return. When defendant pulled his hand out of the truck, Officer Moreno observed that he had a handful of money. The truck turned up Lamont Street and drove away. Officer Moreno saw defendant counting United States currency. He then radioed his partners that he had just observed a drug transaction and described what he had seen and which way the buyers had gone. The three other officers, who were in the unmarked car, pulled the truck over. The officers removed the driver and the passenger from the truck and placed them under arrest. The officers found a plastic bag in the truck containing 16 small blue glassine packets of heroin. Testing of the contents revealed that they contained 1.81 grams of heroin.

While the stop of the truck was underway, Officer Moreno continued to watch defendant, who was counting his money. Defendant turned and started walking up St. Ives Street while he was counting. Then he stopped, ran up to the corner, and looked down Morrison Street. Defendant then ran up Morrison Street and disappeared. Officer Moreno radioed the other officers and they told him about the traffic stop.

Ten minutes or so after defendant disappeared, Officer Moreno again saw him, dressed in the same clothing, walking toward the corner of St. Ives and Lamont Streets. Officer Moreno radioed his partners. The other officers drove slowly up Lamont Street toward St. Ives Street. When defendant saw the officers, he turned and ran down St. Ives Street. When the officers sped up to chase him, the car they were in hit a curb and blew out a tire. Police Detective Brian Daley left the car and began chasing defendant up St. Ives

Street on foot, yelling "Come here, Pittsburgh Police; Pittsburgh Police." App. at 177.

Detective Daley testified that defendant made "a motion with his left hand[,]" that he could not see what was thrown because the area was dark, but that he "heard the metallic click when the object hit the sidewalk." App. at 203. He kept yelling for defendant to stop and, eventually, defendant stopped running and put his hands in the air. Officer Moreno told the others "Yeah, that's him. That's the guy." App. at 179. After defendant was arrested, he was searched by Detective Daley, who found $137 and no drugs on him.

The police returned to the area where defendant had made a throwing gesture. Upon canvassing the scene, they found a black Colt .32 caliber handgun by the porch steps of an abandoned house. The gun had six rounds in the magazine and one round in the chamber.

Defendant was arrested on state charges that evening. On July 30, 2001, defendant was arrested on federal drug and firearms offenses. The state charges were nolle prossed. Agent Edwin Whitteaker, a special agent with the Bureau of Alcohol, Tobacco and Firearms, read Goodnight his rights after he was arrested. Defendant waived his rights and spoke with Agent Whitteaker. Defendant told him that, on the night in question, he was over at a friend's house watching a movie. He said that, when he left his friend's house, he saw the car coming toward him and ran because he thought it was a drive-by shooting. He explained that, when he saw that it was a white male chasing him, he figured it was the police and put his hands up. He admitted that he had the firearm that night, explaining that the reason he had it was because the prior night he had gotten shot in the Brighton Ridge area. Defendant said "he threw the gun because he wasn't the type of person to shoot someone." App. at 222.

-4-

The driver of the pickup truck, Brent Lauffler, testified that the drug sale occurred through the passenger side of his truck, which conflicted with Officer Moreno's testimony. Lauffler testified that he "assumed" that he and the passenger, Eric Bosch, had paid $380, but was not sure of the amount because some time had elapsed since that night. App. at 236. Defendant asserts in his brief that, although Lauufler indicated in a previous statement that the purchase price was actually $460, he had never said that the purchase price was $137, the amount of cash found on him when he was arrested.

Goodnight was indicted for distribution and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count One); carrying a firearm during and in relation to a drug trafficking crime and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Three). Goodnight entered a plea of guilty to Count Three of the Indictment. Following a jury trial, Goodnight was convicted on Counts One and Two. The District Court sentenced Goodnight to a 37 month term of imprisonment on each of Counts One and Three, with the sentences to run concurrently, and to a 60 month term of imprisonment on Count Two, with the sentence to be served consecutively to the sentences on Counts One and Three, for a total sentence of 97 months. Goodnight filed a timely notice of appeal.

## II. Jurisdiction and Standard of Review

The District Court exercised jurisdiction over this matter under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

When assessing whether a jury verdict is based on legally sufficient evidence, we "consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt." United States v. Brown, 3 F.3d 673, 680 (3d Cir. 1993), cert. denied, 510 U.S. 1017 (1993). We exercise plenary review over whether the District Court gave a correct statement of the law in its jury instructions. See United States v. Urban, 140 F.3d 229, 231-32 (3d Cir. 1998), cert. denied, 525 U.S. 850 (1998). We also exercise plenary review over challenges to the District Court's legal interpretation of a statute or a sentencing guidelines provision, see United States v. Dorsey, 166 F.3d 558, 560 (3d Cir. 1999), and over challenges to the constitutionality of statutes, see United States v. Singletary, 268 F.3d 196, 198 (3d Cir. 2001).

## III. **Discussion**

### **A**

In order for a jury to find defendant guilty of violating 18 U.S.C. § 924(c)(1), the government had to prove either that: (1) the defendant "during and in relation to any crime of violence or drug trafficking crime . . . use[d] or carrie[d] a firearm" or (2) the defendant "in furtherance of any such crime, possesse[d] a firearm." 18 U.S.C. § 924(c)(1). Defendant asserts that there was no evidence presented that a gun was actively employed in the drug sale and, therefore, the government did not prove that he "used" a firearm. He also asserts that there was no evidence he "carried" the gun "during and in relation to" a drug sale. Defendant argues that this is so because Officer Moreno did not testify that he saw any

evidence of a gun during the drug sale and also because Officer Moreno lost sight of the drug seller after the sale took place. Therefore, defendant posits, it is possible that he obtained the gun after the sale but before he was apprehended. He also asserts that no evidence was presented from which a jury could conclude that he possessed the gun "in furtherance of" a drug sale because the gun was not observed during the drug sale.

The government counters that defendant's arguments are flawed because they presume that the firearms conviction in this case is valid only if supported by direct evidence that defendant was seen with a gun at the time of the drug dealing offense. Indeed, it is a basic principle of criminal law that a conviction may rest entirely upon circumstantial evidence. See, e.g., United States v. Torres, 862 F.2d 1025, 1027 (3d Cir. 1988). In this case, ample circumstantial evidence supports the jury's finding that defendant carried a firearm during and in relation to drug trafficking or possessed it in furtherance of a drug trafficking crime.

Agent Whitteaker testified that defendant admitted to having a gun that evening for personal protection. The government correctly points out that, based on this statement, the jury could have reasonably inferred that defendant carried the gun at all times, including during the drug sale itself. Also, Lauffler testified that he had never seen defendant before he bought the heroin from him and that there were other dealers on the streets of the North Side soliciting customers that night. From this testimony, the jury could have reasonably inferred that defendant kept the gun on him that night for protection from buyers unknown to him and from other dealers. We conclude that the jury was presented with substantial

evidence supporting a finding that defendant either carried a firearm during and in relation to a drug trafficking crime or possessed a firearm in furtherance of a drug trafficking crime. We therefore affirm defendant's conviction on Count Two.

**B**

Defendant asserts that the District Court diluted the burden of proof on Count One of the Indictment by refusing to instruct the jury that the gun, which defendant admitted possessing, could not be considered as evidence of the drug charge. Defendant requested the following instruction: "The fact that Mr. Goodnight possessed a pistol on the night in question may not be considered by you as evidence that he also sold the drugs as charged in the indictment." App. at 118. The Court considered whether to include the requested instruction during the charge conference and decided against its inclusion, based in part on this Court's decision in United States v. Russell, 134 F.3d 171 (1998).

Thereafter, the government argued in closing that the jury should consider that "the Defendant was out on the street that night, past midnight, with a loaded handgun . . . why did the Defendant have the gun on him? Again, there's no dispute here. The parties have stipulated he possessed the gun that evening, and his possession was unlawful." App. at 281, 283. Defendant argues that the government's closing argument further diluted the burden of proof on the drug count.[1]

---

[1]Defendant notes that, because the sale of drugs was an essential element of Count Two, the § 924(c) count, his guilt on Count Two was dependent, in part, on his conviction on this count.

-8-

Additionally, defendant asserts that the defense successfully presented reasonable doubt as to whether he sold heroin to the men in the pickup truck because Lauffler testified that defendant was not the seller. Also, defendant argues that reasonable doubt was created by the fact that Officer Moreno lost sight of him after the sale and because police found only $137 on him while the purchase price of the heroin was at least $380. Defendant asserts that, in light of the foregoing, the question of his guilt on the drug charge was a close one, as evidenced by the jury being deadlocked at one point.

Our review of the record shows that Lauffler testified that he "assumed" that he and Bosch had paid $380 for the heroin. App. at 236. Therefore, the disparity between the amount found in defendant's possession when he was arrested and the purported purchase price of the drugs is not dispositive. As to the identity of the dealer, the jury was not required to believe Lauffler and disbelieve Officer Moreno. As the Supreme Court has explained, "[t]he Anglo-Saxon tradition of criminal justice, embodied in the United States Constitution and in federal statutes, makes jurors the judges of the credibility of testimony offered by witnesses. It is for them, generally, and not for appellate courts, to say that a particular witness spoke the truth or fabricated a cock-and-bull story." United States v. Bailey, 444 U.S. 394, 414-15 (1980). Moreover, gun possession may serve as circumstantial evidence from which a jury can infer drug activity. See United States v. Russell, 134 F.3d at 183 ("it has long been recognized that firearms are relevant evidence in the prosecution of drug-related offenses, because guns are tools of the drug trade."). Therefore, we conclude that the District Court properly denied defendant's requested instruction and that the record does not support

defendant's contention that he necessarily created reasonable doubt of his guilt on the drug charge.

## C

Defendant next asserts that the District Court's method of computing his guideline offense range resulted in impermissible double counting. He asserts that the possession of the same gun on the same occasion should not have been used twice in the computation of his sentence–once to compute the guidelines offense level for Counts One and Three, and a second time to yield a consecutive five-year sentence on Count Two. Defendant proposes two alternative sentencing scenarios: (1) grouping the two gun sentences, Counts Two and Three or (2) grouping Count Three (the felon in possession count) with Count One (the drug count) as did the District Court, but having his base offense level reflect the lesser drug guideline (21 to 27 months) rather than the gun guideline (37 to 46 months, with acceptance of responsibility). Either scenario would have yielded an outcome of 81-87 months imprisonment.

Section 924(c)(1)(D)(ii) provides:

> no term of imprisonment imposed on a person under this subsection shall run concurrently with <u>any other term of imprisonment</u> imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

18 U.S.C. § 924(c)(1)(D)(ii) (emphasis added). The statute expressly bars the running of concurrent sentences, even for conduct occurring during the same occasion. U.S.S.G. §

-10-

5G1.2(a) applies to § 924(c). See U.S.S.G. § 5G1.2(a), Application Note 2. U.S.S.G. § 5G1.2(a) provides, in pertinent part:

> the sentence to be imposed on a count for which the statute (1) specifies a term of imprisonment to be imposed; and (2) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment shall be determined by that statute and imposed independently.

U.S.S.G. § 5G1.2(a) (emphasis added). Defendant argues, notwithstanding the plain language of the statute and guideline emphasized above, that when a statute requires a term of imprisonment, the term of imprisonment should be imposed independently of the sentence for other offenses, but not independently of another term of imprisonment for the same conduct, which happens to violate two different statutes. Defendant concedes that his interpretation of the guidelines is not the only one and that the statute could be read differently, but asserts that his proposed interpretation makes for better policy because consecutive sentences should not be imposed for possession of the same firearm that merely violates different statutes. The interpretation advanced by defendant has been rejected by case law interpreting § 924(c) and the guideline provisions governing it. See, e.g., United States v. Lawrence, 928 F.2d 36, 38-39 (2d Cir. 1991); United States v. Hunter, 887 F.2d 1001, 1003 (9th Cir. 1989). Moreover, application of the lesser drug guidelines, under defendant's second sentencing scenario, contravenes U.S.S.G. § 3D1.3(a), which provides that "[i]n the case of counts grouped together pursuant to § 3D1.2(a)-(c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, i.e., the highest offense level of the

-11-

counts in the Group." U.S.S.G. § 3D1.3(a).

We therefore reject defendant's argument that the District Court's method of computing his guidelines offense range resulted in double counting.

**D**

Defendant acknowledges that this Court has held that 18 U.S.C. § 922(g)(1) does not exceed the scope of Congress's authority under the Commerce Clause. See United States v. Singletary, 268 F.3d 196 (3d Cir. 2001); United States v. Gateward, 84 F.3d 670 (3d Cir. 1996). Defendant explains in his brief that he raises this issue in order to preserve it for en banc consideration or for review by the Supreme Court. Because defendant's conviction at Count Three comports with the current state of the law, we will uphold it.

**IV. Conclusion**

After carefully considering the arguments discussed above and all other arguments advanced by the defendant in support of his assertion that the District Court erred with respect to his conviction and sentencing, we affirm the District Court's decision.

_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

By the Court,

    /s/ Julio M. Fuentes

Circuit Judge