**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1356
_____

UNITED STATES OF AMERICA

v.

ROBERT COLBERT,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-08-cr-00411-001)
District Judge: Honorable Gustave Diamond
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 25, 2012

Before:   HARDIMAN, GREENAWAY, JR., and VANASKIE, *Circuit Judges*

(Filed January 15, 2013)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Robert Colbert pled guilty to conspiracy to conduct a racketeering enterprise in

violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. § 1962(d), and was sentenced to a prison term of 159 months.  On appeal, Colbert

contends that the District Court erred because it did not adjust, credit, or otherwise depart

from the imposed sentence based on the time he spent incarcerated in pretrial detention pending disposition of the RICO charge and for the time he served for the state convictions that formed predicate acts underlying the RICO charge. Finding his challenges to the denial of credit for pretrial detention to be encompassed by an appellate waiver and discerning no error in the refusal to credit time served on the predicate act convictions, we will affirm.

## I.

Since we write principally for the parties, we set forth only the facts essential to our analysis.

On March 29, 2008, Pittsburgh police arrested Colbert and charged him with a state firearms violation and three related offenses. Those charges were *nolle prossed* after a federal grand jury returned an indictment on December 4, 2008 charging Colbert for the same conduct in violation of 18 U.S.C. § 922(g) for possession of a firearm by a convicted felon. In the meantime, on August 21, 2008, the Pennsylvania Parole Board lodged a detainer against Colbert. The detainer was lifted on November 6, 2009, when the maximum expiration date for a 2006 state court conviction was reached.

Colbert made an initial appearance in federal court on January 5, 2009 and has remained in federal custody since then. On February 12, 2010, the grand jury returned a 37-count superseding indictment. Count Two charged Colbert with conspiracy to conduct a racketeering enterprise under RICO for his involvement in gang-related drug activities. On August 5, 2011, Colbert pled guilty to Count Two of the superseding indictment. On January 30, 2012, the District Court sentenced Colbert to 159 months'

imprisonment and, pursuant to the plea agreement, the court dismissed the remaining charges against him. Two prior drug-related state convictions, referred to in the indictment as "Overt Act Number 2" and "Overt Act Number 14," were the predicate criminal acts for the federal RICO charge.

Overt Act 2 related to Colbert's 2002 conviction for possession with intent to deliver a controlled substance. Colbert pled guilty and the Allegheny County Court of Common Pleas sentenced him to two to four years' imprisonment, effective October 28, 2001.[1] On June 19, 2003, Colbert was paroled to a community corrections center but was recommitted on August 8, 2003 for a parole violation. He was again paroled on June 8, 2005.

Overt Act 14 was based on Colbert's 2006 conviction for delivery of a controlled substance. On April 19, 2006, the Allegheny County Court of Common Pleas sentenced him to one to three years' imprisonment. He was paroled on November 6, 2007.

On August 5, 2011, Colbert entered a guilty plea to the RICO conspiracy charge pursuant to a written plea agreement that stipulated that the advisory sentencing guideline imprisonment range was 168 to 210 months. At his sentencing proceeding on January 30, 2012, Colbert argued for reductions in his sentence based upon the time spent in custody from his arrest on March 29, 2008 on state firearms charges until the date that the federal sentence was imposed, and for the time he spent in state custody for the RICO predicate offenses. In imposing a prison term of 159 months, nine months below the

---

[1] At the same sentencing, Colbert also received concurrent prison sentences for two other counts unrelated to this appeal.

3

minimum in the advisory guidelines range, the District Court effectively gave Colbert credit for the time spent in state custody before federal charges were brought against him. The District Court explained that it varied downward by nine months out of concern that the Federal Bureau of Prisons would not credit Colbert with that period of time spent in state custody. The District Court did not reduce the prison term for time spent in federal custody since January 5, 2009. It also did not reduce Colbert's sentence for the time he served on the convictions for the two RICO predicate acts, finding that Colbert was not entitled to such a reduction, either as a matter of law or in the exercise of the District Court's sentencing discretion. Colbert appeals these determinations.

As part of his plea agreement, however, Colbert agreed to waive his right to directly appeal his conviction except in limited circumstances. Relevant to this appeal, Colbert reserved the right to appeal his sentence on the issue of whether he "is entitled to receive a downward sentence adjustment based upon time served in state custody, pursuant to the holding of *United States v. Dorsey*, 166 F.3d 558 (3d Cir. 1999), and U.S.S.G. § 5G1.3(b)." (Supplemental App. 2.)

II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1)-(2).

On appeal, Colbert advances three arguments related to his sentence. First, he argues that the District Court erred by failing to adjust his sentence under U.S.S.G. § 5G1.3 for the entire period of time he was in custody – March 29, 2008, when he was arrested by Pittsburgh police on the firearms charge, until January 30, 2012, when the

4

District Court sentenced him for the RICO charge. Second, Colbert asserts that the District Court erred by failing to credit his sentence for satisfactory behavior under 18 U.S.C. § 3624(b) during that same period. Specifically, Colbert claims an entitlement to a sentence reduction of 108 days for "good time credit." (Appellant's Am. Br. 11.) Finally, Colbert contends that the District Court erred by failing to depart downward for the five years, eight months and ten days he spent incarcerated for his state convictions underlying Overt Acts 2 and 14.

## A.

The Government seeks to enforce the appellate waiver with respect to Colbert's first two arguments, asserting that they fall outside the waiver's exception for appeals premised upon an asserted entitlement to a downward departure for time served in state custody pursuant to *Dorsey*. In *Dorsey*, we held that district courts may depart downward to adjust a defendant's sentence based on time served in state custody prior to federal sentencing when the criteria in U.S.S.G. § 5G1.3(b) are met. *Dorsey*, 166 F.3d at 562. Section 5G1.3(b) of the Sentencing Guidelines authorizes a sentencing court to adjust a sentence based on the period of time a defendant already served on an undischarged prison term for an offense that was "relevant conduct" under U.S.S.G. § 1B1.3(a)(1)-(3) and resulted in an increase in the offense level under Chapters Two or Three of the Guidelines.

We exercise plenary review of whether an issue on appeal is subject to an appellate waiver. *United States v. Goodson*, 544 F.3d 529, 537 n.6 (3d Cir. 2008). "We decline to exercise jurisdiction . . . where the issues on appeal fall within the scope of the

5

waiver and the defendant knowingly and voluntarily agreed to the waiver, unless 'enforcing the waiver would work a miscarriage of justice.'" *United States v. Saferstein*, 673 F.3d 237, 242 (3d Cir. 2012) (quoting *United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008)).

Colbert's first two arguments concern the District Court's failure to depart downward in imposing his sentence or give credit toward his sentence for good behavior for the period from March 29, 2008 to January 30, 2012, when he was in custody following his arrest on state firearms charges up to the point of his federal sentencing. The District Court did grant a downward variance for the period from March 29, 2008 to January 7, 2009, during which Colbert was held in state custody on a state firearms charge before his arraignment in federal court. Colbert argues that the District Court also should have reduced his sentence for the period for which he was in federal custody prior to his sentencing. He also argues that his sentence should have been reduced by 108 days to account for good conduct time during the entire period of pre-sentence detention, both in state and federal custody.

The two arguments in support of a reduction for time spent in pretrial detention do not fit within the limited exception to the appellate waiver, which concerns only whether Colbert "is entitled to receive a downward sentence adjustment *based upon time served in state custody*" under *Dorsey* and U.S.S.G § 5G1.3(b), (Supplemental App. 2 (emphasis added)). Therefore, Colbert's first two arguments fall within the scope of the appellate waiver.

We also find that Colbert knowingly and voluntarily agreed to the appellate waiver. At the change of plea hearing, the Government's counsel and the District Court summarized the terms of the plea agreement and Colbert affirmed under oath that he understood those terms and signed the agreement voluntarily. In addition, during the colloquy, both defense counsel and Colbert himself sought to clarify the reservation of Colbert's right to appeal as it pertained to the state prison sentences he served for the crimes underlying Overt Acts 2 and 14 under *Dorsey*. The record indicates that Colbert understood the terms of the plea agreement, including the appellate waiver, and knowingly and voluntarily agreed to them.

In addition, enforcing the appellate waiver would not work a miscarriage of justice. At the sentencing hearing, the District Court explained that it granted the downward variance for the period from March 29, 2008 to January 7, 2009, during which Colbert was held on the state firearms charges, based on its belief that the Bureau of Prisons would not credit that time because he was not in federal custody. As to the period of time that Colbert was undeniably in *federal* custody, however, the District Court lacked authority to award credit against the *federal* sentence because it is the United States Attorney General, acting through the Bureau of Prisons, who is vested with the authority to award pre-sentence credit for time spent in federal custody. *See* 18 U.S.C. § 3585(b); *United States v. Wilson,* 503 U.S. 329, 336-37 (1992).

Nor would there be a miscarriage of justice by our failure to entertain Colbert's argument that the District Court should have reduced his sentence under 18 U.S.C. § 3624(b) for any satisfactory behavior during his incarceration between March 29, 2008

and January 30, 2012. That authority also is vested in the Bureau of Prisons. *See* 18 U.S.C. § 3624(b)(1) (stating that a prisoner may receive credit toward his or her sentence "subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations").

Finding no miscarriage of justice in the enforcement of the appellate waiver, we decline to exercise jurisdiction to review the issues relating to any adjustments to Colbert's sentence for the period he was in custody between March 29, 2008 and January 30, 2012.

B.

Colbert also contends that the District Court erred by failing to depart downward under U.S.S.G. §§ 5G1.3 and 5K2.23 for the time he served in state custody for his state drug convictions, which formed the basis for Overt Acts 2 and 14 in the RICO charge. To the extent Colbert challenges the District Court's interpretation of the U.S. Sentencing Guidelines, our review is plenary. *United States v. Fumo*, 655 F.3d 288, 309 (3d Cir. 2011).

Section 5K2.23 authorizes a sentencing court to grant a downward departure if the defendant already completed a previous term of imprisonment and a downward departure under § 5G1.3(b) would have applied if that time served was part of an undischarged sentence. *See also* U.S.S.G. § 5G1.3, cmt. 4 (clarifying that a court may grant a downward departure for time served on a discharged sentence if § 5G1.3(b) would have applied if the completed term had been undischarged). Colbert asserts that he served a

total of 2096 days in state custody for the two state drug convictions for which he should have received credit under *Dorsey*.

One criterion for the application of a downward departure under § 5G1.3(b) is that the previously served "term of imprisonment [must have] resulted from another offense . . . that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments) . . . ." U.S.S.G. § 5G1.3(b). Here, Colbert's two previous state drug convictions were calculated as part of his criminal history category; they were not used to increase his offense level for the RICO conviction. As a result, § 5G1.3(b) does not apply, and Colbert was not entitled to a downward departure under § 5K2.23 for the time he served for the two state court convictions. *See United States v. Parker*, 512 F.3d 1037, 1040 (8th Cir. 2008).

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.